GEORGE E. JENNINGS, GILMAN H. PERKINS AND AARON E. PERKINS, RESPONDENTS, *v.* THE GRAND TRUNK RAILWAY COMPANY OF CANADA, APPELLANT.

*Principal and agent — shipping note — presumption that the bill of lading contains the same conditions — power of a vendor shipping articles to his vendee to limit by a special contract, the carrier's liability — release — protection of a carrier from the negligence of connecting roads — the failure to serve a notice must be specially pleaded — when the defendant cannot avail itself of it.*

In 1881 J. & H. Shanly & Co., who resided in the city of Rochester, were engaged in buying potatoes in Canada, at points upon the line of the defendant's road, and shipping them to the city of St. Louis for a market. Before making any shipment they requested the general manager of the defendant's business to give them the lowest rates in car-load lots from certain points mentioned, on the defendant's line, to the city of St. Louis, and the said rates were given to them in a letter written by its general agent.

Upon the trial of an action, brought to recover damages alleged to have been sustained by the plaintiffs because of the defendant having negligently delayed to transport a car-load of potatoes, it appeared that this car-load was delivered to the defendant by one Du Brule, of whom Shanly & Co. had purchased the same, on the eighteenth day of April at Brockville, that Du Brule, at the time of the delivery, notified the defendant's station agent that they were to be shipped to Shanly & Co., and thereupon Du Brule filled up and signed with his own hand and delivered to the station agent a blank shipping note kept by the defendant and supplied to shippers for that purpose, which, in substance, was a request to defendant to ship said potatoes subject to the terms and conditions printed on the back of such shipping note, which terms were assented to as the basis upon which the defendant's bill of lading was to be delivered. At the same time the station agent delivered to Du Brule a bill of lading, which he attached to his own draft drawn on Shanly & Co. for the balance due him for the purchase-price of the potatoes. The draft was forwarded for collection and the same was paid a few days thereafter. Neither party put the bill of lading in evidence on the trial or proved its contents.

*Held,* that, as Du Brule was charged by the plaintiffs with the duty of shipping the goods, the carrier was authorized to make a valid and binding special contract with him, such as the owner might have made if he had been personally present conducting negotiations.

That as neither party put in evidence the bill of lading, nor was its contents proved on the trial, it and the shipping note, which were both executed at the same time, and simultaneously delivered and related to the same subject-matter, should be considered as constituting one agreement, and that it would not be assumed that the bill of lading contained any provision changing or modifying

the terms or conditions contained in the shipping note, or anything inconsistent with these provisions or conditions.

That as no proof was made in this case as to the laws of Canada, the rule which prevails in this State allowing a carrier to limit his liability would be presumed to prevail in Canada.

That the facts of this case, that the special rate at which the potatoes were carried was the lowest rate made by the defendant for this class of freight; that it was made at the particular request of the shipper; that it was, in fact, a less rate than the defendant was authorized to charge for the transportation of the potatoes beyond the line of its own road, constituted a good consideration for the special contract which was valid and binding alike upon the carrier and the plaintiffs.

The referee found as a fact that the transportation of the potatoes was negligently hindered and delayed by the defendant upon its own road, and also upon the connecting road, and that in consequence of such delays and the long confinement of the potatoes in the car they were greatly depreciated in their market-value.

It was provided in the contract that the responsibility of the defendant should terminate when the goods should have arrived at the place to be reached on its own road, where it connected with other roads, and that the defendant should not be liable for damages to the property arising from delays which occurred on the connecting roads, the contract providing as follows: "Nor will the company be liable for damages occasioned by delays caused by storms, accidents, over-pressure of freight or unavoidable causes, or by the weather, wet, fire, heat, frost, or delay of perishable articles, or from civil commotion."

*Held,* that as the defendant could legally contract, and had, in this case, agreed to carry and deliver the goods at East St. Louis, the connecting lines engaged by it to carry the goods to their destination were the agents of the defendant, and it was liable for their negligence resulting in damages to the owners.

That, as all the delays occurred in consequence of the defendant's own negligence, the release did not protect the defendant, as it did not, by its terms or necessary implications, exempt the defendant from damages arising from its own negligent acts or those of its agent or servants.

The defendant contended that it was exempt from such damages as the plaintiff suffered by loss of market, on account of the delays, under another clause of the contract, which provided "that the company shall not, in any case or under any circumstances, be liable for loss of market."

*Held,* that as this clause did not in terms apply to a case where the loss of a market arose from the defendant's negligence, the contract should be so construed as to make the release in this respect applicable to cases where the loss of a market arose from other causes, such as a failure to deliver within a stipulated time.

The defendant pleaded, in bar of a recovery for the cause of action set out in the complaint, that no written notice was served of any claim for damages, as required by the twelfth clause printed on the back of the shipping bill, which is as follows: "12. That no claim for damages to, loss of, or detention of, any goods for which this company is accountable shall be allowed, unless notice in writing and the particulars of the claim for said loss, damage or detention are given to

the station freight agent nearest to the place of delivery within thirty-six hours after the goods, in respect of which said claim is made, are delivered."

The allegation of the answer, in this respect, was : "And this defendant alleges, upon information and belief, that the notices required by said agreements were never given as thereby required." No allegation was made that no notice was served within thirty-six hours from the time of the delivery of the freight at the end of its journey to the plaintiff, except inferentially and argumentatively.

*Held*, that as the court should enforce the common-law obligations of common carriers with rigor, and should modify them only with reluctance and of necessity, and as the defense set up by the defendant did not, in any repect, go to the merits of the controversy between the parties, except as it was founded upon this forfeiture clause contained in the printed conditions indorsed upon the way-bill, that the defense was not sufficiently alleged to enable the plaintiff to avail itself of the clause in question.

The claim was, in fact, presented to the defendant by letter before the action was brought, though not within the thirty-six hours, and an answer was sent from the defendant's general freight agent's office acknowledging the receipt of the notice, expressing the sorrow of the agent with regard to the detention of the potatoes, and stating that the plaintiffs were doubtless aware that such detention had arisen through causes over which the defendant had no control, namely, the strike of railway employees in Chicago.

*Held*, that this was a waiver of the condition.

That the condition was not available to the defendant, under the circumstances of this case, as it was not intended by the officers of the company to apply, when the agreement of the company was to transport freight so far from the place of shipment and beyond the defendant's line.

That the time limited, in which to ascertain the particulars of the loss and place them before the company, was palpably too short to enable the owners to comply therewith when the delivery was to be made so far off.

That the plaintiffs, under a special contract which was outside of the company's general business and against its printed regulations, could not be bound by the clause on the back of the shipping bill which, apparently by inadvertence, had not been struck out or adapted to long hauls over other railways than the defendant's, and to deliveries at great distances from its western terminus. (Barker, J., dissenting.)

*Jackson* v. *St. Paul Fire and Marine Insurance Company* (99 N. Y., 124) followed.

Appeal from a judgment, entered in the office of the clerk of Monroe county on the 21st day of June, 1887, upon the report of a referee, awarding to the plaintiff the sum of $2,420 damages and $675 costs.

The defendant is a foreign corporation, created by and under the laws of Canada, for the transportation of freight and passengers, its western terminus being at Fort Gratiot, where it connects with other railways running west from that point, constituting a through line

to the city of St. Louis.  In 1881 J. H. Shanley & Co., residing in
the city of Rochester, N. Y., were engaged in buying potatoes
in Canada, at points upon the line of the defendant's road, and
shipping them to the city of St. Louis for a market.  Before making
any shipments they requested the general manager of the defend-
ant's business for the lowest rates in car-load lots from points men-
tioned on the defendant's line to the city of St. Louis, which were
given in a letter written by the general agent, who also, at the same
time, informed the defendant's station agents of the rates which
had been given Shanley & Co.  Thereafter, and between the
eighteenth and twenty-sixth day of April, Shanley & Co. delivered
to the defendant, in car-load lots, five separate shipments of potatoes
to be transported to St. Louis.  It is claimed that the transportation
was negligently delayed, and in consequence thereof the potatoes
were depreciated in quality and the shipper lost a market.  This
action is to recover the damages sustained by reason of the delays.
One car-load was shipped at Brockville, April 18, 1881, by one
Joseph E. Du Brule, of whom Shanley & Co: purchased the potatoes,
who, at their request, delivered the potatoes to the defendant for
transportation.  At the time of the delivery Du Brule signed and
delivered to the station agent a shipping note, so-called, of which
the following is a copy :

"GRAND TRUNK RAILWAY COMPANY OF CANADA.

"This company will not be responsible for any goods missent,
unless they are consigned to a station on their railway.  Rates,
weights and quantities entered on receipts are not binding on the com-
pany, and will not be acknowledged.  All goods going to or coming
from the United States will be subject to customs, charges, etc.

"BROCKVILLE, *April* 18th, 1881.

"The Grand Trunk Railway Company of Canada will please
receive the undermentioned property, in apparent good order,
addressed to order of Merchants' Bank of Canada, East St. Louis, Ill.
To be sent by the said company, subject to the terms and conditions
stated above and on the other side, and which are agreed to by this
shipping note, delivered to said company, as the basis upon which
their receipt is to be given for said property.

| No. | Packages and Species of Goods. | Marks. | Weight, lbs. | Paid on. |
|---|---|---|---|---|
| 1 | Car potatoes in bulk, said to contain 400 bus............. | ...... | ...... | ....... |
| .... | Owner's risk................ | ...... | ...... | ....... |
| .... | Advise J. H. Shanley & Co... | ..... | ...... | ....... |
| .... | G. T. car 1563............... | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |
| .... | ............................ | ...... | ...... | ....... |

"J. E. DU BRULE,
"*Consignor.*"

The material clauses, printed on the back of this paper, are referred to in the opinion. They were printed under a heading, in large type, which reads, viz.: "General notices and conditions of carriage." The facts and circumstances connected with each of the other shipments, so far as they differ from the one just referred to, are pointed out in the opinion. Before the commencement of this action Shanley & Co. assigned their cause of action to the plaintiffs.

*E. C. Sprague*, for the appellant.

*Martin W. Cooke*, for the respondents.

MACOMBER, J.:

The opinion of the presiding justice, which contains all the material facts except as herein mentioned, would lead to an affirmance of the judgment in the case, save for the twelfth printed condition on the back of the bill of lading. That condition is as follows: "12. That no claim for damages to, loss of or detention of any goods for which this company is accountable, shall be allowed unless notice in writing and the particulars of the claim for said loss, damage or detention are given to the station freight agent nearest to the place of delivery, within thirty-six hours after the goods in respect of which said claim is made are delivered."

The notice in writing above mentioned was not given within

thirty-six hours to the nearest station freight agent of the defendant, and hence the presiding justice is of the opinion that no recovery can be had by plaintiff, except for the one car load which was never delivered. I cannot assent to that proposition under the established facts appearing in this case. Courts of law should enforce the common-law obligations of common carriers with rigor, and should modify them only with reluctance and upon necessity. (*Express Company* v. *Caldwell*, 21 Wall., 266.) The defense set up in the fifth clause of the answer, now relied upon by the defendant, does not, in any respect, go to the merits of the controversy between the parties, except as it is founded upon this forfeiture clause of the printed conditions indorsed upon the way-bill. But even this defense is not sufficiently alleged to enable the defendant to avail itself of the clause in question. The allegation is, " and this defendant alleges, upon information and belief, that the notices required by said agreements were never given as thereby required."

There is no allegation that no notice was served within thirty-six hours from the time of the delivery of the freight at the end of its journey, to the plaintiffs, except inferentially and argumentatively. It is true, that if the notice was never given, it could not well have been given within thirty-six hours, but the question is one of strict defense and the parties will be held to accurate averments. A plea of the ten-year statute of limitations would cover the shorter statute of six years, yet it would be insufficient to enable the defendant, under such a plea, to avail himself of the shorter statute in the proof. The objection must be specifically set up. In this instance the defendant has not alleged specifically that the notice required was not given within thirty-six hours, as it ought to be required to do before permitting a defense of this description to discharge the defendant from liabilities. The allegation of the answer is "that the notices required by said agreements were never given as thereby required." This may, and it probably does, refer only to the omission of the plaintiffs' assignors to give " the particulars of the claim for said loss," etc. ; or it may mean that the notice in writing was not given to the station freight agent nearest to the place of delivery, but to some other station agent. At all events in setting forth this unconscionable forfeiture of the plaintiffs' property rights and the defendant's consequent exemption from liability, the

defendant has not unequivocally placed itself clearly on the thirty-six-hours clause. By not so making the allegation of the breach of the condition this technical defense was waived. But, furthermore, the answer, as it stands, is not true, because the claim was, in fact, presented to the defendant by letter before the action was brought, though not within the thirty-six hours.

Three of the shipments were made on the 18th day of April, one on the 20th of April and one on the 26th of April, all in the year 1881. The usual time for transporting potatoes, the distance assumed to be carried by the defendant, was from four to six days. All the damages sustained by the plaintiffs for the negligence of the defendant was by reason of the detention of the several cars, and not by reason of any injury inflicted after their arrival at the destination, except, in one instance, where the car was never attempted to be delivered to the plaintiffs. On the 21st day of May, 1881, the plaintiffs' assignors wrote a letter to the defendant, in which they stated that the potatoes were detained, and had not arrived; and that it was causing them heavy loss; and that they intended to look to some one to pay the damages. Upon the receipt of that letter, and on May 25, 1881, the defendant made this communication to the plaintiffs' assignors:

"GRAND TRUNK RAILWAY OF CANADA,
"ASSISTANT GENERAL FREIGHT AGENT'S OFFICE
" (KINGSTON, EAST).

" MONTREAL, *May* 25, 1881,

" GENTLEMEN.—Your favor of the 21st at hand. I am sorry with regard to the detention of your potatoes. No doubt you are aware that this has arisen through causes over which we had no control, namely, the strike of railway employees in Chicago.

"Yours truly,

" GEORGE B. REEVE,
"*A. G. F. A.*

" Messrs. J. H. SHANLEY & Co., 183 *East Main St., Rochester, N. Y.*"

All of these cars of freight, with the exception of the car which was lost, had arrived at their destination at the time of the writing

of the letter by Shanley & Co. to the defendant; that letter, though its contents are doubtless imperfectly given, owing to the refusal of the defendant to produce it, is broad enough, under the circumstances, to cover all claims to damage which Shanley & Co. had sustained by reason of the delays in the transportation, and the defendant manifestly so regarded it; for instead of placing its denial of liability upon the ground now sought to be set up in its behalf, or on the ground of insufficiency of details of the claim, the defendant placed it wholly upon the proposition that it was absolutely absolved from liability by reason of the labor strikes at or near Chicago, which claim was wholly untenable. This, too, was a waiver of the condition; that a waiver may be made by not insisting upon its fulfillment, or by circumstances, is abundantly established by authority.

In the case of *Hermann* v. *Niagara Fire Insurance Company* (100 N. Y., 411), the policy required notice of a loss to be served forthwith on the company. It accepted final proof of loss, without objection that this condition had not been complied with, basing its refusal to pay on the ground that the policy had been canceled. It was held that a strict compliance with the provision had been waived. In the case of *Griffey* v. *The New York Central Insurance Company* (100 N. Y., 417) there was a like provision in the policy that notice of any loss should be given forthwith, and it was held that if the holder gave notice without unreasonable delay he was in time. So in the case of *Barnum* v. *Merchants' Fire Insurance Company* (97 N. Y., 188), the assured was required by the policy to produce, with the proofs of loss, a certificate of a magistrate or notary public most contiguous to the place of the fire, and not concerned in the loss, stating certain particulars in reference thereto. The certificate accompanying the proofs was of a notary residing within 400 feet of the fire. It appeared, however, that there was another notary who lived nearer. No defect in this respect was pointed out by the defendant until after the commencement of the action. It was held that it was then too late to raise the objection. In the case of *Ames* v. *New York Union Insurance Company* (14 N. Y., 253) it appeared that the proofs of loss were required to be furnished within thirty days after the fire, and the company had ninety days thereafter in which either to pay or to object to the sufficiency of

the proofs.   If objection to the proofs was made, it was competent for the insured to supply any defect by further proof.   By the twelfth condition of the policy, any action thereon was required to be brought within six months after the loss.   Thus it will be seen that the company could, and in that particular instance did, actually so manipulate the ninth and twelfth conditions printed in its policy that the plaintiff would be required to furnish further proofs of loss, so as to be satisfactory to the insurance company, at a time beyond the six months limited by the twelfth clause, provided the company insisted upon the ninety days which was accorded it in which to pay the loss, and this would so tide the matters over the short statute of limitations of six months that no action could finally be brought upon the policy.   It was held that the action might be maintained after the expriation of the six-months limitation.

Moreover, the condition in question, even though not waived and pleaded, is not available to the defendant under the circumstances, as the referee has properly held.   It was not intended by the officers of the company to apply, when the agreement of the company was to transport freight so far from the place of shipment and beyond the defendant's line.   The time limited, in which to ascertain the particulars of the loss and place them before the company, was palpably too short to enable the owners to comply therewith, when deliveries were made so far off.   The plaintiffs cannot be bound by a clause on the back of the shipping bill, which, apparently by inadvertence, had not been struck out or adapted to long hauls over other railways than its own, and to deliveries at great distances from its western terminus, under a special contract which was outside of the company's general business and against its printed regulations.

In the case of *Jackson* v. *The St. Paul Fire and Marine Insurance Company* (99 N. Y., 124) the plaintiff, who was the receiver of the Patterson Fire Insurance Company, brought an action upon a policy of reinsurance taken out by the Patterson company upon certain property in California.   The blank form which was used in the policy of reinsurance was that of the ordinary policy of insurance, and contained the condition that no action should be begun thereon until after an award had been made, as specified in the policy, fixing the amount of the claim, nor unless the action was begun within twelve months after the loss.   It was

held that the condition had application to the contract of primitive insurance only, and not to a contract of reinsurance. This case is sufficient authority for us to hold that the mere circumstance of the existence on the back of a contract of affreightment of a condition does not work a forfeiture in cases where manifestly it was not intended to apply, and where it remained only on account of the inadvertence of parties to strike out, so as to conform to an agreement which was not contemplated by the author of the blank form.

I think the judgment was right, and that it should be affirmed.

DWIGHT, J., concurred.

BARKER, P. J. (dissenting):

In disposing of this case the referee, in effect, held, as matter of fact and of law, that the defendant received and transported the potatoes, at the request of the owners, without any discharge or release from the duties or liabilities imposed by law upon common carriers of merchandise; that no special contract was entered into between the shipper and the carrier, except as to price of transportation. If his conclusions in this respect are sustained by the evidence, then we are unable to see why the judgment should not be affirmed.

The defendant contends, that at the time the property was delivered for shipment, a special contract was entered into between it and the owner, by the terms of which the owner released it from all claim for damages arising from particular causes set out in the written agreement, which the referee failed to observe in awarding damages to the plaintiff, and for this reason the judgment should be reversed.

This action relates to five separate and distinct shipments, and it was held by the referee that the defendant failed to perform its agreement as to all of them. All the legal questions presented for our consideration arise upon the facts and circumstances connected with the particular shipment made on the eighteenth day of April, at Brockville, as those connected with the other shipments are not materially different. This car load was delivered to the defendant by Du Brule, of whom Shanley & Co. had purchased the same, who, at the time of the delivery notified the defendant's station agent that they were to be shipped to Shanley & Co.,

and thereupon Du Brule filled up and signed with his own hand, and delivered to the station agent, a blank shipping note kept and supplied by the defendant to shippers for that purpose, which, in substance, was a request to defendant to ship said potatoes, subject to the terms and conditions printed on the back of said shipping note, which terms were assented to as the basis upon which the defendant's bill of lading was delivered. At the same time the station agent delivered to Du Brule a bill of lading, who attached it to his own draft, drawn on Shanley & Co., for the balance due him for the purchase-price of the potatoes, which was forwarded for collection, and the same was paid a few days thereafter. Neither party put the bill of lading in evidence on the trial or proved its contents. As bearing on the question whether the owner of the property was bound by the conditions of the shipping note delivered to the station agent, the referee made the following finding, viz. : " Six. That said shipment bill was so made by said Du Brule and delivered to said defendant without the knowledge or consent of said J. H. Shanley & Co., and without request or requirement at the time of said defendant or its station agent, but in conformity with a general requirement or custom of defendant in the receipt of goods for transportation, known to said Du Brule from the transaction of similar business with said defendant theretofore on his own account. But said J. H. Shanley & Co. then knew it to be the universal custom of railroad companies, so far as their experience went, to require shipping bills to be executed by the shipper containing the terms and conditions of shipment, upon the delivery of potatoes or similar goods to such companies for transportation."

Upon the facts and circumstances thus narrated, which are the material ones bearing on the case, the question is presented whether Du Brule had authority, as the agent of the owner, to make this contract, fixing the terms and conditions of the defendant's liability as carrier. As a general rule, the agent to whom the owner intrusted the goods for delivery to the carrier is to be regarded as having authority to stipulate as to the terms of transportation. (Redfield on Carriers, § 52.) The owner of the potatoes, after their purchase from Du Brule, left them in his charge for shipment, and the defendant was justified in treating him as the agent of the owner, and authorized to make and conclude a contract for the transportation.

The circumstance which has been mentioned that the defendant's station agent who received the property and issued the bill of lading, knew at that time that Shanley & Co. were the owners of the property, does not take the case out of the operation of the general rule. Shanley & Co. were not present at the time the shipment was made to act in their own behalf. The right of the carrier to negotiate for the terms of transportation with the person in charge of the property is based upon the fact that the owner is absent and has placed the property in charge of another, and not upon the circumstance that the carrier does not know who the owner of the property is. Du Brule was the only person present with whom the defendant's agent could make the necessary arrangement, and he stood towards the defendant, for this purpose, in the position of an owner. The special finding of the referee that the shipping note, signed by Du Brule, was delivered to the defendant without the consent or knowledge of Shanley & Co., we construe as a finding that they gave him no instructions whatever on this subject, and such was the fact, as the evidence discloses. This circumstance, therefore, may be passed as having but little, if any, bearing on the questions under consideration.

The plaintiff contends that before the property was delivered for shipment Shanley & Co. had made and concluded a contract with the carrier for the transportation, and that the goods were received under the terms of that arrangement, and for that reason the agreement made by Du Brule was unauthorized, and that the defendant cannot substitute and rely upon the latter contract as determining the rights of the parties. We think the evidence fails to support this contention. Some weeks before the goods were shipped or purchased Shanley & Co. requested the defendant's agent to give " the lowest rates on potatoes in car-load lots from Brockville (and other points) to East St. Louis," to which the agent replied, making rates, and the same was accepted by them. No other terms or conditions for the transportation of the property were agreed upon before shipment, nor were any negotiations had relative to the subject. The other terms and conditions of the contract were left for future arrangement, if either party should insist upon special terms and conditions different from those imposed by law upon common carriers of merchandise. At the time the goods were

delivered the shipper had the option either to insist that the defendant should transport the goods without any special contract for the carriage or to assent to the terms proposed by the defendant. . I am of the opinion, although it is not necessary to pass upon the question in disposing of this case, that the defendants might at any time, before any potatoes were delivered for transportation, withdraw the rates offered and make other rates if they were such as was demanded of all shippers of the same class of goods from and to the same points.

In view of the whole case, I have reached the conclusion that the goods were shipped under a special contract, assented to by the shipper's authorized agent. As indicating Du Brule's authority and control over the goods, it should be kept in mind that they were consigned to the Merchants' Bank of Canada by Du Brule, as consignor, and he received the bill of lading and attached the same to a draft which he drew in his own name on Shanley & Co , and which he procured to be discounted and used the avails to pay the balance due him for the potatoes; and this draft Shanley & Co. honored on presentation. It thus clearly appears that Du Brule, who signed the shipping note as consignor, had not made a full and unqualified delivery of the potatoes to his vendees at the time the bill of lading was delivered to him. This car-load was consigned to the bank, with instructions in the shipping note to advise Shanley & Co. on the arrival of the goods at the place of destination. An examination of the cases bearing on the question will show that the rule is well established that where the agent of the owner is charged by him with the duty of shipping goods, the carrier may regard him as fully authorized to make a valid and binding special contract, such as the owner might have made if he had been personally present conducting negotiations. (*Nelson* v. *Hudson R. R. R. Co.*, 48 N. Y., 498.) In the case last cited the plaintiff purchased of dealers in the city of New York a mirror, and gave them instructions to ship the same to him by railroad to his home in Fulton, in this State. They shipped the same by the defendant's road, and made a special contract, by the terms of which the carrier was exempt from certain liabilities which covered the injury to the property complained of. It was held that authority to deliver goods to a common carrier for transportation includes all the necessary and usual means of carrying the

same into effect; that the consignor of goods to a distant consignee, who is the owner, is the agent of the latter for the purpose of shipping. A ruling to the same effect was made in *Squire* v. *New Central and Hudson River Railroad Company* (98 Mass., 239). In that case the owner of a cargo of live hogs placed them in the charge of an agent or servant to look after and care for them while in transit from Chicago to New York, without any authority specially conferred to make contracts for transportation with any of the connecting lines. When the hogs were loaded on the defendant's cars at its terminus, near Suspension Bridge, the agent or servant in charge made a special contract with the company as to the terms or conditions of transportation, and it was held that the contract was binding on the owners, for the reason that the person in charge was the only person with whom the carrier could make the arrangement, and that he stood in the place of the owner for this purpose, although he did not have express authority to make the agreement. A like ruling was made in the case of *York Company* v. *Central Railroad Company* (3 Wall., 113), and many other cases might be cited to the same effect.

Neither party put in evidence the bill of lading, nor was its contents proved on the trial. As it and the shipping note were both executed at the same time and simultaneously delivered, and related to the same subject-matter, they should be considered as constituting one agreement. We may not assume that the bill of lading contained any provision changing or modifying the terms or conditions contained in the written request to receive and ship the property, called in that instance a shipping note, or anything inconsistent with those provisions and conditions. A bill of lading is the written evidence of a contract of carriage of goods from one place to another for a stipulated price. (*Covill* v. *Hill*, 4 Denio, 323; 1 H. Black, 359.) When it was disclosed that a bill of lading had been prepared and delivered to the consignor at the time the goods were shipped, upon the terms proposed by the shipper, it seems reasonable to hold that it was incumbent upon the plaintiff to produce the bill or prove its contents as a part of their case. But, whether that be so or not, the instrument given in evidence, which was assented to by the carrier, must be regarded as constituting the contract between the parties.

Having reached the conclusion that the property was shipped under a special contract binding on the consignors, we have now to inquire whether the stipulations which it contains releasing the defendant from certain common-law liabilities as carriers is supported by a good consideration. In this State the law is well settled that a common carrier of merchandise may, by express contract, limit his common-law liability shielding him from damages occasioned by his negligence or that of his servants. (*Dorr* v. *New Jersey S. N. Co.*, 11 N.Y., 485; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 id., 180; *Bissell* v. *N. Y. C. R. R. Co.*, 25 id., 442; *Nicholas* v. *N. Y. C. R. R. Co.*, 89 id., 370.) Without some proof on the subject, we must assume that by the laws of Canada the defendant might, for the service it undertook to perform, charge a fair and reasonable compensation. This is the rule which prevails in this State.

In discussing the question as to what would constitute a good consideration to support a release from those duties and obligations which the law imposes on common carriers, EARL, J., said in the case of *Nelson* v. *The Hudson River Railroad Company* (48 N. Y., 511): "They must carry for all upon equal terms, charging one no more than another for freight or property delivered under like circumstances. But they are not bound to carry all kinds of property for the same freight. They may charge ordinary rates for some kinds of property exposed in the carriage to ordinary hazards, and extra rates for property exposed to extra hazards. As railroad companies are bound to carry freight without any contract limiting their liability, their mere agreement to carry does not furnish a consideration for the agreement to limit their liability; nor does their agreement to carry for the price which they would be authorized to charge, in case their liability was not limited, but it is a sufficient consideration if they agree to carry for a reduced compensation because their liability is limited."

In that case it was held that a good consideration was proved to support a release from liability because the contract, on its face showed that the railroad company was to carry at "tariff rates," as the court could not say, in the absence of proof, that "tariff rates" meant the full rate which could be lawfully charged by the defendant for the carriage of the kind of goods transported in that case.

In view of all the facts of the case before us, we think that the

special rate at which the potatoes were carried, being the lowest rate made by the defendant for this class of freight, at the particular request of the shipper, was, in fact, a less rate than the defendant was authorized to charge for the transportation of the potatoes beyond the line of its own road.

In *York Company* v. *Central Railroad Company* (3 Wall., 107) it was held, that when there was an agreement limiting the liabilities of the carrier, it would be presumed, in the absence of proof to the contrary, that it was upon the consideration of a reduced rate for the carriage. It appeared in that case that the goods were to be carried at a fixed rate, which was stated in the bill of lading, and the court said that the consideration thus expressed, was sufficient to support the entire contract, including the release by the consignor, which exempted the carrier from certain risks. We have reached the conclusion, based upon the authorities cited, that the special contract was based upon a good consideration and is valid and binding alike upon the carrier and the defendant.

The referee found, as a fact, that the transportation of the potatoes was negligently hindered and delayed by the defendant upon its own road, and also upon the connecting road, and in consequence of such delay and the long confinement of the potatoes in the car they were greatly depreciated in their market-value by heating and sprouting. On reading the evidence bearing on this question, we see no reason for disagreeing with the referee's conclusion. The usual and customary time for transporting goods of this class, perishable in their nature, was six days, and the time actually taken was eighteen or twenty days.

In estimating the plaintiff's damages, the referee made allowance for depreciation in quality and also for decline in the market-price of the potatoes, which, upon the shipment now under consideration, with the interest thereon, amounted to the sum of $399.26. The remaining and important question is, does the release from liability, contained in the contract of shipment, constitute either a full or partial defense for the losses sustained by the owners, for which damages were awarded to the plaintiff? It is provided in the contract that the responsibility of the defendants shall terminate when the goods shall have arrived at the place to be reached on its own road where it connects with other roads, and that the defendant

shall not be liable for damages to the property arising from delays which occurred on the connecting roads. The defendant insists that this term of the agreement shields it from so much of the damages which the owner of the goods suffered in consequence of the delays which occurred on the other lines.

The defendant could legally contract to carry and deliver the property at places beyond the terminus of its own road, and from the facts and circumstances of this case it is established, beyond all dispute, that the defendant agreed to carry and deliver the goods at East St. Louis. (*Condict* v. *The Grand Trunk R. Co.*, 54 N. Y., 500.) The connecting lines engaged by the defendant to carry the goods to their destination were the agents of the defendants, and it is liable for their negligence resulting in damages to the owners. The question of liability for damages, as presented in this case, is to be treated as if the delays all occurred on the defendant's own road. As the delays occurred in consequence of the defendant's own negligence, the release from liability does not protect the defendant, as the contract does not, by its own terms or necessary implication, exempt it from damages arising from its own negligent acts or those of its agents or servants. The clause of the contract relied upon reads as follows: " 3. Nor will the company be liable for damages occasioned by delays caused by storms, accidents, over-pressure of freight or unavoidable causes, or by the weather, wet, fire, heat, frost, or delay of perishable articles, or from civil commotion."

The cases of *Mynard* v. *Syracuse, etc., Railroad Company* (71 N. Y., 180) and *Nicholas et al* v. *New York Central and Hudson River Railroad Company* (89 id., 370) may be referred to as establishing a rule of construction applicable to the provisions contained in the clause quoted, showing that they do not shield the defendant from the damages arising from its own act of negligence, or those of its servants.

The defendant further contends that it is exempt from such damages as the plaintiff suffered by loss of market on account of delays under another provision of the contract which provides " that the company shall not, in any case, or under any circumstances, be liable for loss of market."

It is argued by the learned counsel for the defendant, in support

of his position, that the rule of law that a carrier is responsible for negligence, unless its contract by its exact terms release it from the consequences of its negligence, has no application to the measure of damages; that such rule relates to and affects only the liability of the carrier. A common carrier is not liable for loss of market unless he is guilty of negligence in delaying the transportation. If, however, he should contract to deliver the freight within a fixed time, he is liable for damages arising from non-delivery within the stipulated period, including loss of market, although the non-performance did not occur from any fault of his own. (*Harmony* v. *Bingham*, 12 N. Y., 99.) Within the rule laid down in the cases already cited, we think the exemption does not include a case where the loss of market arises from a negligent delay in transportation. The question presented should be treated the same as if the only claim for damages was the one arising from the loss of a market. In such a case it is plain the question would not be simply one of the measure of damages, but the primary inquiry would be whether the owner has a right of action arising out of a carrier's negligence, and if that should be established, then he might recover as damages the loss sustained by reason of the decline in the market at the place of destination. As the release does not, in terms, apply to a case where the loss of market arises from the defendant's negligence, the contract should be so construed as to make the release in this respect applicable to cases where the loss of market arises from other causes, such as a failure to deliver within a stipulated time.

The defendant pleaded, in bar of a recovery for the cause of action set out in the complaint, that no written notice was served of any claim for damages as required by the twelfth clause printed on the back of the shipping bill, which is as follows: " 12. That no claim for damage to, loss of or detention of any goods for which this company is accountable shall be allowed unless notice in writing and the particulars of the claim for said loss, damage or detention are given to the station freight agent nearest the place of delivery within thirty-six hours after the goods in respect of which said claim is made are delivered."

The defendant requested the referee to find that no notice in writing, making claim for loss, damage or detention, was given to the station agent at the place of delivery within thirty-six hours

after the delivery of the potatoes. This the referee refused to find, and assigned as a reason for his refusal that the clause requiring the notice to be served did not apply to shipments beyond the terminus of the defendant's own road. In this conclusion I think the learned referee erred. In terms, the provisions of the clause are not limited in their application to cases where the freight is to be delivered at points on the defendant's own road, and the purpose of requiring a notice of loss to be served is as applicable to a case where the goods are to be delivered beyond the defendant's own line as when they are to be delivered at some point on its own road. As before stated, my conclusion is that the contract required the defendant to transfer and deliver the goods to the consignee in the city of St. Louis, and, for this reason, I think the condition requiring notice to be given of the loss, when one is claimed, should be held to include the place of ultimate destination. The evidence would support the finding that no claim of loss was given by the consignees as required by the agreement. In disposing of the questions already considered an attempt has been made to show that a special contract was made and entered into, and that the same was valid and binding on the consignees, and if we are correct in that conclusion, the provision of the contract requiring notice of loss to be served must defeat a recovery, if on a new trial it should be found that the requisite notice was not served. This is one of the terms of an entire contract, founded upon a good consideration, and it is as obligatory upon the shipper as any other provision of the agreement. In this State it is now well settled that the shipper and carrier may, as between themselves, insert in their agreement for the transportation of freight any condition which does not contravene public policy or which is not forbidden by law. If the validity of this condition was made to depend upon whether it was a reasonable one or not, I should be inclined to hold that it is. The parties here have made it a matter of specific agreemeent, based upon a good consideration, and the question of the reasonableness of the stipulation has been placed by the action of the parties beyond our inquiry.

In view of the perishable character of the property, it was reasonable for the carrier to require that a notice of a claim for damages should be served within the time mentioned after the goods were delivered, for the reasons fully stated in the cases of *Express Com-*

*pany* v. *Colwell* (21 Wall., 264), and *Lewis* v. *The Great Western Railway Company* (5 Hurl & Norman, 367). The car-load of potatoes shipped on the eighteenth of April at Preston, containing 401 bushels of potatoes, the referee found had never been delivered, and that the plaintiff's damages, with the interest thereon, amounted to $545.60; and I am unable to discover any reason why the judgment should not be affirmed as to that item of damages. The other shipments were made under contract of the same nature and character of the one we have considered, and the recovery for damages for the losses sustained on each of those shipments, by reason of the negligent delay in delivery, cannot be sustained, for the reason that no notice of the loss was served.

The judgment should be reversed and a new trial granted before another referee, unless the plaintiff stipulates to reduce the judgment to the sum of $545.69; and if such stipulation is served within thirty days, then the judgment should be modified accordingly, and as modified affirmed, without costs of this appeal to either party.

Judgment affirmed.