## ILLINOIS CENTRAL RAILROAD COMPANY
### V.
### THEODORE JONTE.

1. RAILROADS—EXEMPTION FROM LIABILITY BY CONTRACT.—A railroad company has a right to exempt itself by contract from liability for loss or damage to goods delivered to it for carriage, except when the same is c used by the negligence of its own servants.

2. EVIDENCE.—As the purpose of the contract offered as evidence in this case was to show that by the terms of the original contract, when taken all together, no liability had ever attached to appellant, it was proper evidence under the pleadings.

3. AGENCY—SHIPMENT OF GOODS.—The authority to an agent to ship goods with a common carrier, includes all the usual and necessary means of carrying it into effect, and as a general rule, the authority given to an agent to ship goods carries with it the authority to accept a bill of lading, or to make a contract containing exemptions from liability.

4. LIMITATION IN RECEIPT.—The contract in this case does not violate the statute which prohibits common carriers from limiting their common law liability to deliver safely by a stipulation in the receipt, for the limitation to the liability of the carrier is not expressed in the receipt given by the carrier.

5. SIGNING CONTRACT—KNOWLEDGE OF CONTENTS.—The claim that appellee and his agent did not read the receipt or know its contents and therefore that it was not binding on appellee is not well taken. Where a party can read and write, he must be presumed to know the terms of a contract signed by him. If he signs the contract without reading the contents it is his own fault, and his ignorance will not avail him, in the absence of fraud or coercion in procuring his signature thereto.

6. RESPONSIBILITY OF CARRIER BEYOND ITS TERMINAL LINE.—A carrier is not bound to assume any responsibility for the transportation of goods beyond the terminal points reached by its own conveyances. Whe her a carrier has assumed such responsibility or not is a question of fact to be determined from the evidence in each case.

APPEAL from the Circuit Court of Coles county; the Hon. J. W. WILKIN, Judge, presiding. Opinion filed September 21. 1883.

Messrs. CLARK & CLARK, for appellant; that if the corn was damaged while in transit, the presumption must be, under the evidence, that it was done while in the possession of

Ill. Cent. R. R. Co. v. Jonte.

the last carrier, cited Laughlin v. C. & N. W. R'y Co. 28 Wis. 204.

Defendant had a right to limit its liability by contract: Field v. C. & R. I. R. R. Co. 71 Ill. 458.

Messrs. CRAIG & CRAIG, for appellee.

HIGBEE, J.   The declaration in this case contains a single count in assumpsit upon a contract by appellant, as a common carrier of goods for hire, to safely carry a lot of broom-corn from Humboldt, in the State of Illinois, to Philadelphia, in the State of Pennsylvania, and there deliver the same to appellee in good order.   It avers the delivery of the corn at Philadelphia by the carrier in a damaged condition whereby plaintiff sustained damages.

The first error assigned questions the correctness of the ruling of the trial court in refusing to admit in evidence on behalf of appellant, the following contract:

HUMBOLDT, ILL., Nov. 10, 1881.

Received of Theo. Jonte (per Chambers), 35 bales broomcorn, more or less, to be delivered at Mattison Station at special rates, being thirty ($30) dollars per car, in consideration of which, and for other valuable consideration, it is hereby mutually agreed that said company shall not be liable for breakage or loss from the cars, delay of trains, or any damage said property may sustain, except such as may result from a collision of a train, or where cars are thrown from the track in the course of transportation.

M. RYAN, Agent.

For JONTE.

No. of car, 5191, C. S. L.      L. B. CHAMBERS, Shipper.

The right of a railroad company to exempt itself, by contract, from liability for loss or damage to goods delivered to it for carriage, except when the same is caused by the negligence of its own servants, is settled by a number of well-considered cases in this State.   Indeed the doctrine is carried beyond this in the case of Arnold v. I. C. R. R. Co. 83 Ill. 2.3, where Mr. Justice Scholfield, in delivering the

opinion of the court, says, "the doctrine is settled in this court, that railroad companies may contract or exempt themselves from liability on account of the negligence of their servants, other than that which is gross or willful," and to sustain the same cites the following cases: I. C. R. R. Co. v. Read, 37 Ill. 484; I. C. R. R. Co. v. Morrison, 19 Id. 136; W. T. Co. v. Newhall, 24 Id. 466, and Adams Express Co. v. Haynes, 42 Ill. 89. See also St. L. & I. M. R'y Co. v. Larned, 103 Ill. 294. But it is insisted by appellee that the contract was not admissible in evidence under the general issue, the only plea in the case being non-assumpsit. The evidence in the record shows that this contract and a receipt stating the terms of the shipment, executed by the agent of the railroad, were both executed at the time of the shipment as different parts of one and the same contract. The purpose of the evidence offered was to show that by the terms of the original contract, when taken all together, no liability had ever attached to appellant, and for that purpose it was proper evidence under the pleadings, and should have been admitted.

It is next contended that the contract was properly rejected for want of proof tending to show authority in Chambers to execute it. It is conceded that Chambers signed the contract for Jonte, but both of them deny his authority to do so. The law does not require express authority to execute such an instrument to make it binding on the principal. On the contrary, it is often conclusively presumed from the nature of the business the agent is authorized to transact. In all acts authorized to be done by an agent, whether of a general or special nature, it may be laid down as a universal principle that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the objects and ends of the agency. Story on Agency, Sec. 85. Hence the authority to an agent to ship goods with a common carrier includes all the usual and necessary means of carrying it into effect. Such a power can only be executed by obtaining the consent of the carrier; the agent is therefore authorized to contract with him as to the terms of the transaction. He may in the exercise of a rea-

sonable discretion agree to such terms of carriage as he can obtain and shall think for the best interests of his employer, provided they are such as are usual in making similar consignments. Nelson v. H. R. R'y Co. 45 N. Y. 408; Shelton v. Merch. Disp. Trans. Co. 59 Id. 258; Robinson v. Merch. Disp. Trans. Co. 48 Id. 470.

And as a general rule the authority given to an agent to ship goods carries with it the authority to accept a bill of lading or to make a contract containing exemptions from liability. Lawson on Contracts of Carriers, Sec. 223, and the authorities there cited.

It appears that in the fall of 1881, appellee, who resided at Mattoon, was purchasing broom-corn at Humboldt and shipping it east by rail; that most of the purchases and all of the shipments, amounting in all to fourteen or fifteen car-loads, were made for him by his agent, Mr. Chambers, who resided at Humboldt. In every instance, contracts releasing the railroad carrying the same from liability for loss in consideration of reduced rates, similar to the one offered in evidence, had been signed by the agent for his principal, and no objection was heard to the agent's want of authority until the last shipment was made and the loss sued for was sustained. These facts were known to the station agent who shipped the goods in controversy for appellant. Chambers, acting for appellee, ordered the cars, loaded them, received the receipt stating the terms of the contract of carriage, sent the same to his principal, who forwarded it to Philadelphia, and received from him the money to pay the parties from whom the corn had been purchased. By this course of dealing Chambers was held out as the agent of appellee and apparently clothed with whatever power was necessary to contract for the terms of transportation, and his contract for the shipment of the goods under such circumstances, in the absence of notice to the contrary, was as binding on his principal as if expressly authorized by him.

It is also contended that the contract violates the statute which prohibits common carriers from limiting their common law liability, safely to deliver the property intrusted to them

for carriage, by any stipulation expressed in the receipt given for such property, and that the court properly refused to receive it in evidence for that reason. This position is not tenable. The limitation to the liability of the carrier is not expressed in a receipt given by the carrier. On the contrary, it is a contract between the parties upon a sufficient consideration, signed by the party to be affected thereby, by his agent, and is neither within the letter or spirit of the statute, nor the mischief thereby intended to be prohibited, even if the power of the legislature to do so were conceded.

It is next insisted that the court erred in not granting a new trial because the evidence failed to prove the contract to ship the goods through to Philadelphia as alleged in the declaration.

Upon this point appellee testified in his own behalf, that in the fall of 1881, W. W. Chamberlain, traveling freight agent of appellant's road, came to his house at Mattoon and asked him why he did not ship by the Central, to which appellee replied, because he got better rates; and then named the rates he was getting to Philadelphia and told Chamberlain that if he did ship on the Central he wanted his broom-corn billed clear through and the rates put on the bills. Chamberlain replied they could give rates of $30 per car to Mattison and 38 cents per hundred pounds from there through, and he would have the station agent at Humboldt notified. Appellee says he accepted this offer, and the station agent was notified of the rates, and the goods loaded upon a car that went through to Philadelphia without breaking bulk. Chamberlain testified in behalf of appellant that he had left the service of appellant and had no interest in the suit; that he told Mr. Jonte that he would write to Mr. Tucker, the general freight agent of the road, and see what rates could be got and have him notify the station agent; that he had no authority to give rates nor to make any contract to ship beyond their line of road, and that he did not make any contract with Mr. Jonte to do so. At the time of the shipment, no notice seems to have been given to Chambers, appellee's agent who made the shipment, or to the station agent, of any verbal contract

such as is now claimed by Jonte, nor was the shipment made under any such contract. On the contrary, the goods were shipped to Mattison, a station on appellant's road, and a receipt therefor signed by the station agent and delivered to Chambers, stating that the road had received from Theodore Jonte, in apparent good order, consigned to Howell & Patterson, the articles as marked and described in the margin thereof, to be transported to Mattison Station, subject to the condition that the company assumed no responsibility except for loss or injury on its own line of road. The property was described in the margin of the receipt as follows: "Howell & Patterson, No. 12, S. W. St., Philadelphia, Pa. Rates from Humboldt to Mattison $30 per car per 100. Mattison to Philadelphia 38 cents per 100 lbs. H. T." At the same time Chambers, acting for appellee, in consideration of the reduced rates of carriage agreed upon, executed to the railroad company the release above set out, which states the place of delivery to be Mattison Station. There can be no doubt that the parties making the shipment understood it to be upon the terms expressed in the receipt signed by the station agent, and the contract signed by Chambers for Jonte, and not under any verbal contract made by Jonte with Chamberlain, of which they had not even been notified.

But it is claimed by appellee and his agent, Chambers, that neither of them read the receipt or knew its contents and therefore that it was not binding on appellee. It was filled up on one of the printed blanks of the company and delivered at the time of the shipment to Chambers, and by him sent to Jonte, who attached a draft to it and sent it forward for collection, and at the same time sent money to Chambers to pay the parties from whom the broom-corn had been purchased. In his testimony Jonte says, "I read all the written part of the receipt, but the printed part I had seen so often that I did not stop to read it. I read the word Mattison." When we consider the fact that Jonte had been in the habit of making similar shipments, his testimony leaves no room to doubt that he was familiar with the printed forms used, and when he had read the written part of it he well knew that the corn

was shipped to Mattison Station and not to Philadelphia. He is equally chargeable with notice of the contents of the receipt, through his agent who made the shipment, and stated its terms in a written contract signed by him. He was the book-keeper of appellee and could read and write, and must be presumed to have known the terms of the contract signed by him; but if he did not, it was his own fault, and his ignorance will not avail him, in the absence of fraud or coercion in procuring his signature thereto. Black v. W. St. L. & P. R'y Co., 11 Bradwell, 465.

Appellee contends that this shipment comes within the rule repeatedly announced by the Supreme Court of this State, that the acceptance of goods for carriage marked to a point beyond the terminus of the carrier's line will be construed for through transportation. Such an inference can only be drawn in the absence of a contract to the contrary. It is the settled law of this State, that a carrier is not bound to assume any responsibility for the transportation of goods beyond the terminal points reached by its own conveyances. Erie R'y Co. v. Wilcox, 84 Ill. 239. It is optional with the carrier to assume such responsibility or not, and whether it has done so or not is a question of fact to be determined from the evidence in each case. Here the contract expressly limits the carrier's liability to deliver the property on its own line, and as there is neither averment in the declaration, nor proof of any damages to the goods of appellee while on the line of appellant's road, we do not see how the verdict of the jury can be sustained.

Other questions are discussed in the briefs of the parties, but in the view we have taken of the case, it is not necessary to decide them. The judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.