JAMES G. BROWN AND HAMILTON DAUGHADAY

v.

THE LOUISVILLE & NASHVILLE RAILROAD COMPANY.

*Railroads—Injury by Fire While in Transportation—Limitation of Liability—Power of Consignor to Bind Consignee—Agency.*

1.  In an action against a railroad company for loss of goods by fire while in transportation, it will be assumed that special rates were given in consideration of an exemption from the common law liability contained in the bill of lading issued in another State, unless want of consideration is proven.

2.  The consignor being, under the laws of New York, the agent of the consignee in shipping goods and receiving bills of lading therefor, the consignee who sues in this State is bound by an agreement in a through bill of lading issued to the consignor in New York, that none of the connecting lines over which the goods are to be transported shall be liable for their loss by fire while in transportation.

3.  A clause in a bill of lading issued to a consignor in another State consigned to a person in St. Louis, that no carrier shall be liable from loss by fire from any cause, on land or water, or that no carrier shall be liable for loss by fire while the goods are awaiting transshipment at any port, releases a carrier from liability for such loss while the goods are awaiting transshipment to St. Louis in its depot at East St. Louis.

4.  General authority given by a consignee to the consignor to deliver goods to a carrier for transportation includes the power to stipulate for the terms of transportation and accept a bill of lading containing exemptions from liability.

[Opinion filed October 8, 1890.]

APPEAL from the Circuit Court of St. Clair County; the Hon. GEO. W. WALL, Judge, presiding.

Appellants brought three suits against appellee to recover the value of four cases of quilts bought by appellants in New York, five bales of sheeting bought in Evansville, Indiana, and twelve bales of domestics bought in Columbus, Georgia. These goods were shipped from the several places by the several vendors as consignors and were consigned to appel-

lants at St. Louis, Missouri, and a through bill of lading was delivered to each of the several shippers at the time the goods were received for transportation. The goods were destroyed by fire, without fault or negligence of appellee, in its freight depot at East St. Louis, the terminus of its line, while awaiting transfer from said freight depot to St. Louis via the St. Louis Bridge and Tunnel Company, in accordance with the written orders appellants had previously given appellee to ship all freight received for them by that line and not by the St. Louis Transfer Company. At the trial it was admitted that the consignors mentioned in each of said bills of lading were, and still are, large and frequent shippers of freight over the respective lines issuing and delivering said bills of lading and over the various lines of transportation connecting therewith. That each of said consignors was always in the habit, as such shipper and consignor, for a long period of time immediately preceding the dates of the respective bills of lading in evidence, of receiving from the same carriers respectively issuing and delivering to them and each of them said bills of lading, similar bills of lading containing printed therein the very same terms and conditions in every respect as are contained in the respective bills of lading made and delivered by said respective carriers to said N. B. Clafflin & Co., Mackey, Nisbet & Co. and the Eagle & Phenix Manufacturing Co., for the goods in controversy in this case.

That said consignors, nor any or either of them, ever made any objection to any of said terms and conditions contained in said bills of lading, but received the same during all of said time without objection or complaint. That said consignors, and each and all of them, made no objection whatever to any of the terms or conditions contained in any of the bills of lading in this case when the same were delivered to each of them by said respective carriers, but received the same without objection or complaint. The bill of lading for the transportation of the goods from New York is headed, " Kanawha Dispatch " described in said bill as a " Fast freight line between the West, Northwest and Southwest," " H. W. Carr, Gen'l Eastern Agent, New York." " Operated over Old Dominion

Steamship Co., Merchants and Miners Transportation Co., Chesapeake & Ohio Railway, Chicago, St. Louis & Pittsburg R. R., Virginia Midland R. R., Sciota Valley R. R., Kentucky Central R. R., *Louisville & Nashville R. R. (St. Louis* division), Louisville, Cincinnati & Lexington R. R., Chesapeake, Ohio & Southwestern R. R., Louisville, Evansville & St. Louis R. R." Dated New York, January 14 to 16, 1886; stating the receipt by Old Dominion Steamship Co. of B. Clafflin & Co. under the contract thereinafter contained of the property mentioned below (including the New York goods in controversy) marked and numbered as per margin. In the margin appears under head of " marks and numbers," " B. D. & Co., St. Louis Mo." " Brown, Daughaday & Co." " Rates in cases per 100 lbs. from New York to E. St. L., 79 cts." The bill then provides that the freight is to be transported by Steamship Guyandotte, appointed to sail 16th, or by any other succeeding steamer or vessel, to the wharf of the company at Newport News, Va., and there delivered to connecting railroads, or water line, and so on by one connecting line to another until they reach the station or wharf nearest to the ultimate destination.

It further provides : " This bill of lading is signed for the different carriers who may engage in the transportation severally, but not jointly, and each of them is to be bound by and have the benefit of all the provisions thereof, as if signed by it, the shipper, owner and consignee." It further provides : " No carrier, or the property of any, shall be liable for loss or damage arising from any of the following causes, viz.: fire from any cause on land or on water." It further provides : " The acceptance of this bill of lading is an agreement on the part of the shipper, owner and consignee of the goods, to abide by all the stipulations, exceptions and conditions, as fully as if they were all signed by such shipper, owner and consignee." The bill of lading is signed : " H. W. Carr, General Eastern Agent." The bill of lading for the transportation of the goods shipped from Columbus, Ga., is headed " Mobile and Girard Railroad Company and connections. Through bill of lading," and dated January 16, 1886. The

Eagle & Phenix Manufacturing Co. is named as consignor, and Brown, Daughaday & Co., St. Louis, Mo., are the consignees. The goods are described and consigned to that firm at that place to be transported from Columbus, Ga., by the Mobile & Girard R. R. Co., and connecting lines, until they reach the station or wharf nearest to the ultimate destination. The word "Released" was stamped upon the face of the bill *by the consignor* and in that condition was presented to the carrier at Columbus to fill up with the weight and rate, and sign, and when so completed was delivered to the consignor. Among the conditions in this bill of lading is this: "No carrier shall be liable for any loss arising from any of the following causes, viz.: Fire from any cause on land or water;" and substantially the same provisions appear, as are above mentioned as appearing in the New York bill of lading. The bill of lading was signed by Williams, G. F. A. The bill of lading for the transportation of the goods shipped from Evansville, Ind., was issued by appellee to Mackey, Nisbet & Co. as consignors, and appellants were named as consignees, and the goods were consigned to them at St. Louis, Mo. Among the other conditions of said bill are the following :

"In accepting this bill of lading, the shipper of the property carried, expressly accepts and agrees to all its stipulations, exceptions and conditions." "That said Louisville & Nashville Railroad Company * * * shall not be liable for loss or damage to any article carried from the effects of heat or cold, by wet, dirt, fire or loss of weight, * * * nor for loss or damage on any article of property whatever, *by fire or other casualty while in transit or while in depots or places of transshipment.*" By the agreement of plaintiffs and defendant the three causes were consolidated and tried as one by the court. The court found for the defendant and after overruling plaintiff's motion for a new trial, entered judgment on the finding for defendant for costs, to reverse which judgment plaintiffs took this appeal.

Messrs. WISE & DAVIS, for appellants.
On common law questions the courts of this State will pre-

sume the common law to be in force in a sister State.  Crouch v. Hall, 15 Ill. 263; Tinkler v. Cox, 68 Ill. 119.

If, in the State where the contract is made, there exists, as a principle of its common law established by the decision of its courts, a legal presumption arising upon certain acts of parties to a contract which enters as a rule of evidence into their agreement, compelling, or implying from what they do and say, a certain inference or intention, such rule or principle of law will not be applied to the contract in the courts of another State where no such presumption exists, unless, upon the trial, proof of the *lex loci contractus* is made as a fact to be regarded by the court and jury in ascertaining the contract between the parties.  A judge is bound to know the statutes and the common law of his own State, but not of another State; and the court will presume that the common law, as established in his own State, is the common law of the State where the contract is made, unless the contrary is proved as a fact.  1 Wharton on Ev. 300; 2 Phillips on Ev. 427, and cases cited in note.

In Illinois the common law rule is that the consignee is not bound by a clause in a bill of lading exempting the carrier from loss by fire unless the evidence shows he gave the consignor authority to accept the same.  Mer. Desp. Trans. Co. v. Joesting et al., 89 Ill. 152.

A common carrier can not, by contract, relieve himself from liability for the loss of goods delivered to him for transportation, which loss has been occasioned by his own negligence or that of his agents or servants, or where such negligence has in any degree contributed to the loss—and it matters not what degree of negligence has thus incurred or contributed to the loss.  Mich. Southern & Northern Ind. R. R. Co. v. Heaton, 37 Ind. 448; Blackstock v. New York, etc., R. R. Co., 20 N. Y. 48; Condict v. Grand Trunk R. R. Co., 54 N. Y. 500; Michael v. N. Y. Central R. R. Co., 30 N. Y. 564; Mich., etc., R. R. Co. v. Curtis, 80 Ill. 324.

Contracts not clear in their meaning, by which the carriers seek to avoid the responsibility which the law imposes upon them, should be construed most strongly against them.  St. L. & S. E. R. R. Co. v. Schmuck et al., 49 Ind. 302; Edsall et al.

v. The Camden & Amboy R. R. & T. Co., 50 N. Y. 661; Menzell v. Railway Co., 1 Dillon U. S. Cir. C. Rep. 531.

Mr. J. M. Hamill, for appellee.

It is well settled that the place where the contract is made must govern and control its construction and interpretation; and where a bill of lading is given in one State for goods delivered there to the carrier for transportation to another State, where the laws of the two States differ as to the validity or effect of the contract, the law of the State where the contract was made must govern as to the construction of the contract, and as to the extent of the carrier's liability under it. Milwaukee & St. Paul Ry. Co. v. Smith, 74 Ill. 197; Pennsylvania Co. v. Fairchild, 69 Ill. 260; Talbot v. Merchants Despatch, 41 Iowa, 247; Arnold v. Potter, 22 Iowa, 194; Cantu v. Bennett, 39 Texas, 303; First National Bank v. Shaw, 61 New York, 283; Dike v. Erie Ry. Co., 45 New York, 113; Hale v. New Jersey Steam Navigation Co., 15 Conn. 539; Hutchinson on Carriers, Secs. 140, 141, 142, 143 and 144; Wharton on Conflict of Laws, Sec. 429.

It is the universal law of this country that all common carriers may, by express or special contract, limit their common law liability. Anchor Line v. Knowles, 66 Ill. 150; Merchants Desp. T. Co. v. Moore, 82 Ill. 136; W., St. L. & P. Ry. Co. v. Jaggerman, 115 Ill. 407; Germania Fire Ins. Co. v. Memphis & Charleston R. R. Co., 72 New York, 90; M. S. & N. I. R. R. Co. v. Heaton, 37 Ind. 448; The Central Railroad v. Bryant, 73 Ga. 722; Hutchinson on Carriers, Sec. 237.

An authority to deliver goods to a common carrier for transportation includes all the necessary and usual means of carrying it into effect, and, among other things, the power to stipulate for the terms of transportation. Nelson v. Hudson River R. R. Co., 48 New York, 498; Shelton v. Merchants Despatch Trans. Co., 59 New York, 258; Wait's Actions and Defences, 222.

The agent of the owner of goods, with authority to deliver them to the carrier for transportation, is to be presumed to have all the necessary power to carry it into effect; and if it

becomes necessary for him to accept a receipt from the carrier containing conditions as to liability in order to procure the carrier's consent to receive and forward them, the owner becomes bound by his acceptance. And not only has the agent for shipment the authority to deliver the goods and to accept the carrier's receipt, but whenever it becomes his duty to send or forward them, it is his duty also to accept such terms of the carrier as may not be unreasonable, if necessary to procure the acceptance of the goods by him. Hutchinson on Carriers, Secs. 265 and 266; Rawson v. Holland, 59 N. Y. 611. In Railroad Company v. Androscoggin Mills, 22 Wall. 594, the consignee brought suit to recover for te value of the goods which had been destroyed by fire, and it was held to be bound by the clause in the bill of lading exempting the carrier from liability for loss by fire.

At the beginning of the bill of lading issued in New York is given the name of plaintiff's firm, Brown, Daughaday & Co., St. Louis, Mo. In Maghee v. Camden & Amboy Transportation Co., 45 New York, 514, it was decided that " when a railroad company contracted to transport and deliver goods at a point beyond its own line, containing a provision excepting liability from certain specified hazards, the connecting road which received the goods from the contracting road to carry to their destination, was entitled to the benefit of such exception." Ward v. Saratoga and Schenectady R. R. Co., 19 Wend. 534; Burtis v. Buffalo and State Line R. R. Co., 22 New York, 269; Hutchinson on Carriers, Secs. 271, 272 and 278; Nelson & Hudson R. R. Co., 48 New York, 508, also 3 Wallace, 107.

But if there was no evidence in the record to show that under the law of New York this bill of lading was a through bill, then the presumption would be that upon this question the common law of New York is the same as the common law of this State, and in this State it has been held ever since the case of the Illinois Central R. R. Co. v. Copeland, 24 Ill. 333, that when a carrier receives goods to carry, marked for a particular place, it is bound to carry and deliver at that place, although it be a place beyond its own line, and the con-

tract is necessarily a through contract. Illinois Central R. R. Co. v. Johnson, 34 Ill. 389.

GREEN, J. In the printed argument for appellants the following reasons are urged for reversal : "1. That it has not been proved that by the common law of Indiana and Georgia, the consignor is presumed to have authority to bind the consignee by accepting a bill of lading restricting the carrier's common law liability in the absence of evidence to that effect." "2. The terms of the New York and Georgia bills of lading are not broad enough to cover a loss by fire while awaiting transshipment at a depot." " 3. The bills of lading provide for *accidental* delay, while the delay at East St. Louis was *intentional* and without sufficient cause." " 4. The New York bill exempts only the first carrier." " 5. It shows there was no consideration for the limitation of the carrier's common law liability."

Taking up these reasons in inverse order, it appears by the record that the fifth, fourth, third and second reasons are not supported by the facts. It does not appear by the New York bill of lading, or by either of the other bills, that there was no consideration for the limitation of the carrier's common law liability, and the assumption that because it is not shown the rates for the shipment from New York and Indiana were special rates, there could have been no consideration for such limitation, is one we do not favor, but on the contrary we assume that the consideration of a lower rate for transportation was given for the special exemption from the common law liability, unless the contrary is proven by plaintiffs. The New York bill of lading upon its face is a contract for the transportation of the goods from New York by steamer or vessel to Newport News, Virginia, "and there to be delivered to connecting railroads or water line, and so on by one connecting line to another until they reach the station or wharf nearest to the ultimate destination." The names of the different lines over and upon which the " Kanawha Dispatch" carries freight appear in the bill, and among others that of appellee's road. The names of consignors, the desti-

nation, and the rate of seventy-nine cents to East St. Louis, all appear, and no doubt can arise from an inspection that it is a through bill of lading. It is conceded the proof shows that by the common law of New York the consignor is the agent of the consignee in the shipment of goods, and by receiving bill of lading without objection he thereby binds the consignee to all the conditions thereof.

The New York bill of lading provides: "The bill of lading is signed for the different carriers who may engage in the transportation severally, but not jointly, and each of them is to be bound by and have the benefit of all the provisions thereof, as if signed by it, the shipper, owner and consignee." It thus appears that appellant as one of the carriers engaged in the transportation of the goods shipped from New York, by the very terms of the contract, is exempted from its common law liability, and said fourth reason for reversal is not tenable.

As to the third reason urged "that the delay at East St. Louis was intentional and without sufficient cause," we do not so find from the evidence. And we further hold that the second reason can not be sustained if the terms of the respective bills of lading from New York and Georgia are fairly construed. In the New York bill it is provided that "*no carrier* shall be liable for loss or damage arising from fire, *from any cause* on land or water." This provision is not ambiguous; it covers a loss by fire at defendant's freight depot (the defendant being free from negligence), and by it defendant is absolved from liability for such loss. The exemption clause in the Georgia bill of lading is, "No carrier or the property of any shall be liable for any loss or damage arising from any of the following causes, viz.: Fire from any cause on land or on water, or while awaiting transshipment at any port." And on behalf of appellants it is contended the proper construction of this clause is that "Fire from any cause on land or on water" was not intended to include a loss *by fire* while awaiting transshipment, but to apply only to losses by fire while in transit; that the depot was not a *port*, and although the goods had not yet reached their final destination they were not *in transit* when destroyed.

Brown v. L. & N. R. R. Co.

We can not give such a construction and meaning to this clause.

The first reason assigned is the one chiefly relied on for reversal, and in regard to it we are satisfied the evidence introduced on the trial below was ample and sufficient to prove that by the common law of Indiana the consignor is presumed to have authority to bind the consignee, by accepting a bill of lading restricting the carrier's common law liability, and in this case appellants were so bound by, and their goods were shipped and transported over appellee's line subject to, the condition that the carrier should not be liable for loss or damage on the said goods by fire, while in transit, or while in depot, or in place of transshipment. Hence, we hold appellee was exempted from liability for the loss of the goods shipped from Indiana, and plaintiffs had no right to recover therefor. The facts concerning the Georgia shipment are, that in St. Louis appellants bought the goods of the agent of the Eagle & Phenix Co., of Columbus, Ga., to be shipped by the vendor from that place to appellants, at St. Louis, but no orders or directions were given by the latter as to the mode of transportation, or terms, or prices that should be paid therefor. The bill of lading was prepared and printed by the consignor, and filled up by it with exception of the weight of the goods and rate for carrying same. The word "Released" was stamped upon the face of the bill, indicating, as was understood by the consignor and the carrier, that in consideration of a special cheap rate charged for the transportation of the goods to their ultimate destination, the carriers engaged therein were released from their common law liability, in accordance with the printed terms of the bill. In this condition, the consignor's agent brought the bill to the first carrier at Columbus, the weight and rate were inserted, and the bill was signed by the agent of the carrier and returned to consignor's agent, and thereupon the goods were shipped consigned to appellants.

It was admitted the Eagle & Phenix Co., which was and had been for several years a large shipper over the several lines by which these goods were carried, received the bill of lading

without objection, and it must have known by its agent the terms and conditions thereof. Waiving the consideration of the question as to the sufficiency of the proof of appellee's exemption from liability at common law, under the facts as held in Georgia, we are satisfied from the evidence that the consignor had implied authority to ship the goods and make the contract for the transportation thereof, as the agent of appellants. A. R. Smith, on behalf of plaintiffs, testified he bought the goods for them of the vendor's agent in St. Louis, Mo.; that " no instructions were given him (the agent) as to the style of bill of lading that he should accept for us, or for the shipment of the goods." With respect to the power of an agent to bind his principal, it is said in Story on Agency, Sec. 85: " In all acts authorized to be done by an agent, whether of a general or special nature, it may be laid down as a universal principle that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the objects and ends of the agency." As a general rule the agent to whom the owner [intrusts the goods for delivery must be regarded as having authority to stipulate for the terms of transportation, e. g., the consignor of the goods, or any other agent of the owner who purchases or procures them for him. Redfield on Carriers, Sec. 52. An authority to deliver goods to a common carrier for transportation includes all the necessary and usual means of carrying it into effect, and among other things the power to stipulate for the terms of transportation. 1 Wait's Actions and Defences, 222. And as a general rule the authority given to an agent to ship goods carries with it the authority to accept a bill of lading or to make a contract containing exemptions from liability. Lawson on Contracts of Carriers, Sec. 223.

In the case Ill. Cent. R. R. Co. v. Jonte, 13 Ill. App. 424, a contract exempting the carrier from its common law liability was signed by one Chambers, for Jonte, the owner of the goods. In the trial court the contract was not admitted, because no proof was introduced tending to show authority in Chambers to execute it. In the opinion Higbee, J., says: 'The execution by Chambers was not denied, but both he

and Jonte deny his authority to do so. The law does not require express authority to execute such a contract to make it binding on the principal. On the contrary it is often conclusively presumed from the nature of the business the agent is authorized to transact." And further on says, citing authorities : " Hence, the authority to an agent to ship goods with a carrier, includes all the usual and necessary means of carrying it into effect. Such a power can only be exercised by procuring the consent of the carrier. The agent is therefore authorized to contract with him as to the terms of the transportation. He may in the exercise of a reasonable discretion, agree to such terms as he can obtain and shall think for the best interests of his principal provided they are such as are usual in making similar consignments." It was held that under the general rule Jonte was bound by the terms of the contract, and the authorities cited in the opinion sustain that view. We perceive no good reason why the general rule relating to the power of an agent to bind his principal, as announced in the foregoing authorities, should not be applied in this case, and under the facts proven we have no doubt that appellants were bound by the terms of the Georgia bill of lading exempting appellee from liability for the loss of the goods.

The consignor was authorized to ship the goods; no orders or directions were given by appellants as to the mode, terms or prices to be paid for transportation, hence to us it appears that in addition to the legal inference of implied authority to make such contract, arising from the relations of appellants and consignor, and the fact that the latter was authorized to ship the goods, the appellants, who were merchants receiving large consignments from various places, and fully acquainted with the methods and manner of contracting for the carrying of merchandise, contemplated and intended to, and did give the consignor authority to make such terms and procure such rates for the transportation of said goods from Columbus, as the latter deemed most advantageous for appellants. And in our judgment, it was not an unreasonable exercise of the discretion so given for the consignor to obtain for its principal

the benefit of cheap rates, by accepting the terms whereby the benefit could be obtained.   Bills of lading containing the same terms for the transportation of goods over the same lines had, for a long time prior to this shipment, been received by the same consignors, and the experience doubtless satisfied the shipper that such contracts, whereby cheap rates were obtained, were advantageous to the owner.   The case of Merchants Desp. Trans. Co. v. Joesting et al., 89 Ill. 152, cited on behalf of appellants, differs in its facts, and in the evidence of implied authority to the shipper, appearing in this case, but not in that; and the remarks of the judge in the opinion, relied on as announcing a different rule from that which we hold to be the law in this case, in our judgment, do not support such contention.   From what we have said, it follows that in our opinion, the judgment of the Circuit Court was right, and the same is affirmed.

*Judgment affirmed.*