I do not think this objection is available. At the express request of the defendant's counsel, the trial court found that the defendant and its legal predecessor had been for more than 20 years in actual possession "of the strip of land described in the complaint." This is a finding, made at the defendant's own instance, that it was in occupation of the entire parcel which the plaintiff sought to recover. The request was made at the end of the trial, and in the light of all the evidence, and the appellant has no ground for complaint because the court complied with it.

The judgment should be affirmed, with costs. All concur.

---

(3 App. Div. 341.)

JONES v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. PRINCIPAL AND AGENT—SHIPMENT—CONTRACT WITH CARRIER.
    One who intrusts live stock to his agent for shipment, thereby authorizes him to make a contract with the carrier's agent as to terms and conditions of shipment.

2. SAME—UNCONTRADICTED EVIDENCE.
    Where the evidence of the intelligent execution of a contract limiting the carrier's liability is uncontradicted, the contract must be held valid.

Appeal from circuit court, Queens county.

Action by Patrick Jones against the New York, Lake Erie & Western Railroad Company for damages for injuries to live stock in shipment. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed on condition.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Charles Howland Russell, for appellant.
Augustus N. Weller, for respondent.

BARTLETT, J. I think the plaintiff was entitled to recover in this action, but that the amount of the recovery should have been limited to $1,200. The plaintiff, through his agent, shipped a car load of polo ponies for transportation over the Erie Railroad, from Buffalo to New York. Near Middletown the freight train in which the animals were being carried became separated into three parts, and a collision occurred, which inflicted considerable injury upon a number of the ponies. The proof sufficed to establish the negligence of the defendant, and the only question really litigated related to the effect of a release denominated a "Uniform Live-Stock Contract," which was signed by the plaintiff's agent at the time of the shipment at Buffalo. This agreement limited the liability of the carrier to a sum not exceeding $100 each for horses, and an aggregate amount not exceeding $1,200 upon any car load of animals. The learned trial judge correctly instructed the jury that the defendant had a right to make a contract of this kind, limiting its liability, and that the plaintiff, when he intrusted his horses to the man who signed the

release, gave that person the power to make such an agreement with the railroad company. In other words, the agency to ship the animals carried with it the power to make a contract as to the terms and conditions of the shipment; so that, unless the plaintiff was able in some way to avoid the agreement which his agent signed, he was not entitled to recover more than $1,200 for the injury suffered by the animals in consequence of the collision. The view of the evidence on which the case went to the jury, so far as the validity of this release was concerned, seems to have been that there was testimony from which it could fairly be inferred that the plaintiff's agent was misled by the shipping clerk of the defendant at Buffalo in regard to the character of the paper which he signed, and was given to understand that it related to his own application for a pass on the freight train, as a caretaker of the animals, and had no reference to the transportation of the ponies themselves. It does not seem to me, however, that such a view of the evidence is warranted by the record. The plaintiff's agent, who made the shipment, and brought the ponies down, did not say a word indicating that anything whatever occurred between him and the shipping clerk from which he could have received a false idea as to the character of the release. According to his testimony, he signed the paper at the request of the representatives of the railroad at Buffalo, without reading it, or having time to read it, just before the train left with the horses on board. He does not testify to any statement made to him by any person as to the nature or effect of the paper; nor does he say anything from which it can be inferred that he believed it to relate in some way to a pass for himself. The latter suggestion must have come from the testimony of the shipping clerk, who, upon his cross-examination, stated that the plaintiff's agent came into the office at Buffalo to get his pass, and was told, when requested to sign the contract, that he would not require any pass, inasmuch as his name was put upon the running bill which went with the train. But this same witness had previously stated that the release was signed by the plaintiff's agent before the ponies were upon the train, and while he still had plenty of time to read the contract; and subsequently answered two questions by the court, as follows: "Q. When you spoke to him, did you say that this was a live-stock release? A. Yes, I always called them 'releases.' Q. Those are the words you used to Smith? A. Those are the words." The plaintiff's agent, Smith, was not called to contradict the shipping clerk in this respect, so that there is uncontradicted testimony in the case to the effect that he was told what the instrument was at the time he signed it. This evidence, it seems to me, should have been deemed controlling, particularly in view of the fact that two documents were signed by the plaintiff's agent at the time of the shipment. One was the release relating to the animals, which bears the signature, "P. Jones, Shipper, by Charles Smith, Shipper's Agent." The other was a release of liability for any injury which might be sustained by the caretaker. This bears the signature "Charles Smith, in charge." It is apparent, therefore, that Smith must have known that he signed more than one instrument, and, having heard one of

them characterized or described as a live-stock release, could not have supposed that it referred to anything else but the ponies. There would have been a question for the jury on this branch of the case if he had testified to anything tending to show that he was misled as to the true nature of the contract limiting the liability for injury to the ponies, and had been able to deny the statement of the shipping clerk that he called the instrument "a live-stock release," when he asked for the signature; but, in the absence of any denial in this respect, I think the contract should have been deemed valid and effectual. If it had been so regarded, the amount of the verdict would have been restricted to $1,200. If the respondent will consent that the verdict be reduced to that amount and the extra allowance to $60, the judgment should be affirmed. Otherwise I think there should be a reversal, and a new trial. All concur.