## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company *v.* Blind.

[No. 21,719.   Filed May 26, 1914.   Motion to modify denied November 12, 1914.]

1. Carriers.—*Carriage of Live Stock.—Action for Damages.— Complaint.*—In an action against a railroad company for damages for the loss of a horse killed in transit, a complaint alleging that plaintiff "paid and became indebted, and obliged to pay the charges for transportation", etc., sufficiently states the facts showing a consideration for the contract of shipment. p. 402.

2. Carriers.—*Carriage of Goods.—Limitation of Liability.*—A carrier may contract with a shipper for the limitation of its liability in consideration of a reduced rate of transportation, provided the rate is reasonable and the shipper has been given a full, fair and *bona fide* opportunity to ship under a higher rate without limitation of the carrier's liability.   p. 404.

3. Principal and Agent.—*Contracts.—Shipment of Live Stock.— Limitation of Liability.—Pleading.*—While the owner of a horse killed in transit is bound by the contract of shipment entered into by his agent limiting the liability of the carrier, such contract is binding on him only in the absence of fraud, collusion, deceit or overreaching in its execution; hence, where the carrier answered setting up a special contract of carriage entered into with plaintiff's agent, the question of the execution of the contract was a proper subject of inquiry, and it was not error to overrule a demurrer to plaintiff's reply of *non est factum*.   pp. 406, 408.

4. Carriers.—*Carriage of Live Stock.—Limitation of Liability.— Trial.—Instructions.*—In an action for damages for the loss of a horse killed in transit, defended on the ground that plaintiff's agent in shipping the horse entered into a contract limiting the carrier's liability in consideration of a lower rate of transportation, an instruction that plaintiff could not recover if the jury found that the shipment "was made under the terms of a written contract fairly entered into, based on a reduction in the freight rates for transportation", was erroneous in view of plaintiff's reply of *non est factum*, since it could not be justified excepting upon the theory that plaintiff either executed it himself, or knew of, or specifically authorized its execution.   pp. 408, 409.

5. Carriers.—*Carriage of Live Stock.—Limitation of Liability.— Trial.—Instructions.*—In an action for damages for the loss of a horse killed in transit, the refusal of an instruction requested by defendant, to the effect that if the shipment was made by plaintiff's agent under a limited liability contract, the contract

would be binding on plaintiff, was, in view of the evidence, erroneous. p. 409.

6. CARRIERS.—*Carriage of Goods.—Limitation of Liability.*—While the rigor of the liability of the common law may be modified by agreement, except for negligence, shipment must be made without such agreement, and according to schedule, if the shipper so demands. p. 412.

7. CARRIERS.—*Carriage of Goods.—Limitation of Liability.—Statutory Provisions.—Constitutional Law.*—The act of February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914), providing that in actions against a carrier, the shipper need only aver the delivery of the goods to the carrier, and its failure to transport or deliver, with the resulting damage, and placing the burden on the carrier to show that its liability was limited, that the contract was upon a sufficient consideration, that it was reasonable and that it was entered into after opportunity to ship without limitation of liability, does not conflict with §10. Art. 1, of the Federal Constitution, or with the 14th amendment thereof, and is not violative of §23, Art. 4, of the State Constitution. p. 418.

8. CONSTITUTIONAL LAW.—*General and Special Laws.—Limitation of Liability by Carriers.*—Section 22 of Art. 4, of the State Constitution prohibiting the passage of local or special laws regulating the practice in courts of justice, does not prohibit a classification that is natural, reasonable and fair, and is not violated by the act of February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914), relating to the pleading and burden of proof in actions by shippers against carriers of goods, since that act, though applying only to actions against carriers, is not based upon an arbitrary, but upon a natural, fair and reasonable classification. p. 419.

9. CARRIERS.—*Limitation of Liability.—Statutes.—Implied Repeal.*—In view of the legislative purpose in the enactment of the State railroad commission law of February 28, 1905, to enlarge the rights of the shipper, rather than to restrict them, and the proviso in clause h, §11 of the act (§5541 Burns 1914) "that nothing herein contained shall be construed as to abridge, or in any wise lessen the liability of any such carrier as it now is under existing laws", that act did not repeal the act of February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914), placing upon carriers the burden of pleading and proving contracts of shipment in limitation of liability, even though provisions of the two acts may appear conflicting, since the provisions of the act of February 27 are specific and, in case of conflict, must prevail over the general provisions of the railroad commission act. pp. 422, 424, 425, 428, 431.

10. STATUTES.—*Repeal by Implication.*—Repeals by implication are disfavored and are never recognized in the absence of irreconcilable repugnancy, and the courts will resort to every recognized rule of construction to avoid repugnancy or conflict between two acts that would work an implied repeal of the prior one.  p. 422.

11. STATUTES.—*Repeal by Implication.*—*Presumptions.*—The presumption against the implied repeal of an act by one of a later date, enacted at the same session, is especially strong; and acts that take effect on the same day, unless clearly irreconcilable, will be construed as being *in pari materia.*  p. 423.

12. STATUTES.—*Repeal by Implication.*—General things do not derogate from things special, and an act in general terms, and not expressly contradicting the provisions of an earlier one enacted at the same session, will not be considered as affecting the more particular and specific provisions of the earlier act, unless it is absolutely necessary to hold otherwise in order to give any meaning at all to the words of the later one.  p. 423.

13. STATUTES.—*Repeal by Implication.*—Where a particular intention is expressed in an act, which conflicts with a general intention expressed in a later one, the particular intention shall be given effect, leaving the later act to operate only outside the scope of the former.  p. 424.

14. STATUTES.—*Construction.*—*General Rules.*—*Extrinsic Aids.*—The object of all rules of statutory construction is the ascertainment of the legislative intent, and in searching for such object it is proper to consider the common law and other statutes relative to the same subject-matter, together with contemporaneous legislative history, and the evils at which the legislation was aimed.  p. 424.

15. CARRIERS. — *Carriage of Goods.* — *Rates.*—*Regulations.*—*Right to Contest Validity.*—The right of a carrier to contest the validity of a state regulation of interstate rates, is not impaired by its action in putting them into effect.  p. 425.

16. COURTS. — *Rules of Decision.* — *Decisions of United States Courts.*—The decisions of the United States Supreme Court in matters relating to the interpretation of the Interstate Commerce Act are binding on the state courts, but where intrastate commerce only is involved the state courts are not bound to follow the United States Supreme Court, though its decisions under similar statutes are entitled to careful consideration.  p. 428.

17. CARRIERS.—*Carriage of Goods.*—*Reasonableness of Rates.*—It does not necessarily follow that because the legislature has fixed a penalty for charging any other than the published rate, that the latter must be held conclusively just and reasonable. p. 431.

From Benton Circuit Court; *J. T. Saunderson*, Judge.

Action by Charles O. Blind against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company and another. From a judgment for plaintiff, the defendant named appeals. *Reversed.*

*Charles M. Snyder* and *Frank L. Littleton,* for appellant.
*Daniel Fraser* and *Will Isham,* for appellee.

MYERS, J.—Action by appellee against appellant and one Ross, to recover damages for an alleged failure safely to carry and deliver a mare the property of appellee from Templeton, Indiana, to Huntington, Indiana. Appellee's complaint alleged that in September, 1909, he was the owner of a standard bred racing mare of the value of $1,500, and that appellant was a railroad corporation, and common carrier for hire, and that its tracks extended through the town of Templeton, Indiana, to the city of Huntington, Indiana; that September 9, 1909, "the defendant Frank Ross was a servant in the employment of the plaintiff, and had said mare in his possession as a horse groom of plaintiff, for the purpose of accompanying the mare from the town of Templeton, Indiana, to the town of Huntington, Indiana; that he had no interest in the mare, except that he had the temporary possession of her as the agent and employe of the plaintiff, for the purposes aforesaid; that pursuant to the directions he had given Ross, the latter delivered the mare to the defendant at Templeton, Indiana, and on behalf of the plaintiff demanded and required of defendant company, as a common carrier, to transport the mare, and Ross in the car, as a man in charge of her, from the town of Templeton to the city of Huntington; that the defendant undertook, and agreed to transport the mare with safety, and reasonable dispatch from Templeton to Huntington, and plaintiff, by Ross, placed the mare in one of the cars of defendant, furnished by it for that purpose, and paid and became indebted and obligated to pay the transportation charges on the mare to Huntington." Facts are alleged showing that the mare

while so being transported by appellant, was by its negligence, killed, without fault or negligence on the part of appellee. It is also alleged that the defendant company "claimed said Ross shipped the mare in his own name, without disclosing to said defendant that plaintiff was his principal, but that said company well knew at and before it took possession of said mare, that said mare was the property of plaintiff, and worth in the market on said day, fifteen hundred dollars", etc.

Ross filed a disclaimer. Appellant's demurrer to the complaint for want of facts was overruled, and it filed an answer in seven paragraphs, and the court sustained appellee's demurrer for want of facts to the first, second and fifth of said paragraphs. There was a reply in general denial, and a plea of *non est factum,* to the answers, setting up a special contract of carriage, a demurrer to which for want of facts was overruled, and on the trial appellee had judgment for $1,000. The reply of *non est factum* denied specifically the execution of the contract by appellee, or by any one by his authority. The errors assigned are, in overruling the demurrer to the complaint, sustaining the demurrers to the first, second and fifth paragraphs of answer, respectively, overruling the demurrer to the reply of *non est factum,* and in overruling the motion for a new trial.

Appellant's first contention is, that the complaint does not show any consideration on the part of appellee for the contract, inasmuch as it does not allege that appellee

1. paid, or tendered to appellant, a sum of money equal to the rate established by law. The cases cited by appellant hold, that the mere allegation that the contract was made upon full and sufficient consideration without stating the particular facts in regard to this consideration is not sufficient. However in this case, the complaint does not allege that there was a consideration, but states that appellee "paid and became indebted, and obliged to pay the charges for transportation", etc. This sufficiently states the

particular facts to show that there was a consideration for the contract, in addition to the fact that we are bound to take notice of, and presume that a schedule of rates had been fixed, and filed with the State railroad commission, and posted as required by law as a condition precedent of the carriage, and in analogy to the Interstate Commerce Act, the rate so fixed must be regarded as a sufficient consideration, and binding on both parties, and the demurrer was properly overruled as to that point, for that reason. *Priddy* v. *Wabash R. Co.* (1913), 179 Ind. 483, 101 N. E. 724, and cases cited; *United States* v. *Standard Oil Co.* (1907), 155 Fed. 305, 313; *Poor* v. *Chicago, etc., R. Co.* (1907), 12 Interst. Com. R. 418.

The first paragraph of answer alleges reception of the mare for transportation from Ross, without knowledge that she was the property of appellee, and carriage under a written contract, set out, hence there could be no recovery under the contract alleged in the complaint. The second paragraph sets up the receipt of the mare for carriage, and her carriage under a written contract, set out, limiting liability to $100, and offering to consent to judgment for that amount. The third paragraph alleges the carriage under a written contract based upon a consideration of 30 cents per hundred pounds, that three horses were shipped at the same time, under the same contract at a gross weight of 11,000 pounds, and that such consideration was a sufficient consideration for the contract, and that it was fairly entered into after a *bona fide* opportunity to transport at a fair and reasonable rate, without limitation of liability, and that in consideration of the reduced rate, it was agreed that the valuation of each animal would not exceed $100. The fourth paragraph is the same as the third, except that it alleges a provision that no claim shall be made unless a verified claim in writing is filed with the freight agent of appellant at Cincinnati, Ohio, within five days from the date the stock is removed, and that no such claim was filed. The fifth para-

graph alleges the carriage under the written contract, and that except for the act of February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914) of the General Assembly, setting out the title, plaintiff would have been required to count upon the written contract, and had performed its conditions on his part, and alleging the breaches relied on, and that the act is unconstitutional. The sixth paragraph is the same as the fifth, with the exception that it relies upon the failure to count on the written contract. The seventh paragraph alleges the carriage under a written contract; that appellant had filed with the State railroad commission its classification of tariffs in force at the time, which was approved by the commission, and alleges that the special rates were based upon the execution of the contract; that higher rates would have been charged for unlimited liability; sets out the blank form of contract provided by the classification and tariff; that under the classification and tariff the rate of freight on a horse is fixed both by weight and valuation upon an assumed weight of 5,000 pounds for the first, and 3,000 pounds for each additional horse; that the classification provided for all reasonable values and classes of animals, and that a rate may be based on an agreed value; that the unlimited liability rate was ten per cent higher; that the contract was executed after appellee had been given a *bona fide* opportunity to ship at the higher classification, and by the terms of the contract the maximum valuation was fixed at $100 for any one horse; and the offer to confess judgment for that sum. It will be observed that it was an intrastate shipment.

It is well settled that a common carrier may enter into a contract with the shipper by which its liability is limited in consideration of a reduced rate of transportation. provided the shipper is given a full, fair and *bona fide* opportunity to ship under a higher rate and with unlimited liability on the part of the carrier, but it is not necessary that the shipper should have actually been offered the

opportunity of shipping at the higher rate, and under the carrier's common-law liability. If he had demanded it, that is sufficient. *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 470, 88 N. E. 680; *Kansas City, etc., R. Co.* v. *Albers Comm. Co.* (1912), 223 U. S. 573, 32 Sup. Ct. 316, 56 L. Ed. 556; *Deming & Co.* v. *Merchants, etc., Co.* (1891), 90 Tenn. 306, 327, 17 S. W. 89, 13 L. R. A. 518; 1 Hutchinson, Carriers (3d ed.) §404.

The whole scope, tenor and apparent purpose of the State act is to make the rate fixed in the schedules, filed with the commission, or those fixed by the commission, or by the courts, the standard of reasonableness, and as based on a sufficient consideration. This seems to arise necessarily from the provisions of the act of 1907, under which this action arose, as shown by §§5534, 5540, 5541, 5543, 5545, 5549 Burns 1908, Acts 1907 p. 454. The Elkins act of 1903, with the wide scope of the Hepburn and Carmack amendments of 1906, by which §15, the rate section of the Interstate Commerce Act, was recast, furnished the basis of the State act of 1907, which was practically an adoption of the amended Interstate Commerce Act, and we must assume, with the constructions then placed upon it. Upon analogy, and the similarity of the State act to the Interstate Commerce Act, it is sufficient that the rate has been fixed, and filed, and notice of it posted. *Priddy* v. *Wabash R. Co., supra; Kansas City, etc., R. Co.* v. *Carl* (1913), 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; *Chicago, etc., R. Co.* v. *Kirby* (1912), 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; *Texas Pac. R. Co.* v. *Mugg* (1906), 202 U. S. 242, 21 Sup. Ct. 628, 50 L. Ed. 1011; *Arthur* v. *Texas, etc., R. Co.* (1905), 139 Fed. 127, 71 C. C. A. 391. It seems to be well settled by the decisions under the Interstate Commerce Act, that where the shipper has an opportunity to ship without limitation, he can not take advantage of a special rate based upon the conditions and limitations of a special contract, and then repudiate the condi-

tions, or limitations. *Chicago, etc., R. Co.* v. *Cramer* (1914), 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697; *Missouri, etc., R. Co.* v. *Harriman Bros.* (1913), 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; *Atchison, etc., R. Co.* v. *Robinson* (1914), 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; *Boston, etc., R. Co.* v. *Hooker* (1914), 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868; *Kansas City, etc., R. Co.* v. *Carl, supra; Hart* v. *Pennsylvania R. Co.* (1884), 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717.

The answers to which demurrers were sustained were good, and the court erred in sustaining them, unless the facts could have been proved under the remaining answers, or the act of 1905 is invalid, or has been superseded. The facts alleged in the first, second and fifth paragraphs of answer could have been shown under the remaining answers.

Appellant complains of the action of the court in overruling the demurrer to the reply of *non est factum*. The complaint alleges that Ross was appellee's agent to ship

3. the mare, and had no interest in her, and that appellant knew that she was the property of appellee. The two latter allegations are of no materiality in view of the allegation that Ross was appellee's agent to make the shipment, which was done in his own name, and consigned to himself, for the reason that as a matter of law, appellee was bound by the act of his agent in making the shipment, and entering into the contract in the absence of fraud, collusion, deceit or overreaching in its execution, which is not alleged or claimed, where the rate is fixed, and filed with the commission as a basis for the special contract. That is, he can not claim the benefit of the contract on the one hand, and repudiate the conditions from which the benefits arise, on the other. *Adams Express Co.* v. *Byers* (1912), 177 Ind. 33, 95 N. E. 913; *Adams Express Co.* v. *Carnahan* (1902), 29 Ind. App. 606, 613, 63 N. E. 245, 64 N. E. 647, 94 Am. St. 279, note, and cases there cited; *McElvain* v. *St. Louis,*

*etc., R. Co.* (1910), 151 Mo. App. 126, 131 S. W. 736; *Dono-van* v. *Standard Oil Co.* (1898), 155 N. Y. 112, 49 N. E. 678; *Hart* v. *Pennsylvania R. Co., supra; Chicago, etc., R. Co.* v. *Calumet Stock Farm* (1901), 88 Am. St. 87, note; *Wright* v. *Fargo* (1908), 112 N. Y. Supp. 358, 59 Misc. 416; *Nelson* v. *Hudson River R. Co.* (1873), 48 N. Y. 498; *Inter-state Commerce Com.* v. *Delaware, etc., R. Co.* (1911), 220 U. S. 235, 31 Sup. Ct. 392, 55 L. Ed. 448; *Great Northern, etc., R. Co.* v. *O'Conner* (1914), 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703; *Root* v. *New York, etc., R. Co.* (1894), 76 Hun 23, 27 N. Y. Supp. 611; *Jennings* v. *Grand Trunk, etc., R. Co.* (1889), 52 Hun 227, 5 N. Y. Supp. 140; *Addoms* v. *Weir* (1907), 56 Misc. 487, 108 N. Y. Supp. 146; *Waldron* v. *Fargo* (1900), 52 App. Div. 18, 64 N. Y. Supp. 798; *Jones* v. *New York, etc., R. Co.* (1896), 3 App. Div. 341, 38 N. Y. Supp. 284; *Moriarity* v. *Harndens Express Co.* (1862), 1 Daly (N. Y.) 227; *Soumet* v. *National Express Co.* (1873), 66 Barb. 284; *York Mfg. Co.* v. *Illinois Cent. R. Co.* (1866), 3 Wall. 107, 18 L. Ed. 170; *Hill* v. *Boston, etc., R. Co.* (1887), 144 Mass. 284, 10 N. E. 836; *Squire* v. *New York, etc., R. Co.* (1867), 98 Mass. 239, 93 Am. Dec. 162; *California Powder Works* v. *Atlantic, etc., R. Co.* (1896), 113 Cal. 329, 45 Pac. 691, 36 L. R. A. 648; *Armstrong* v. *Chicago, etc., R. Co.* (1893), 53 Minn. 183, 54 N. W. 1059; *Southern Pac. R. Co.* v. *Maddox* (1889), 75 Tex. 300, 12 S. W. 815; *Ryan* v. *Missouri, etc., R. Co.* (1885), 65 Tex. 13, 57 Am. Rep. 589; *Van Schaack* v. *Northern Transp. Co.* (1872), 3 Biss. 394, Fed. Cas. 16,876; *Chicago, etc., R. Co.* v. *Calumet Stock Farm* (1901), 194 Ill. 9, 61 N. E. 1095, 88 Am. St. 87; *Merchants, etc., Co.* v. *Joesting* (1878), 89 Ill. 152; *Illinois Cent. R. Co.* v. *Morrison* (1857), 19 Ill. 135; *Wabash R. Co.* v. *Curtis* (1907), 134 Ill. App. 409; *Brown* v. *Louisville, etc., R. Co.* (1890), 36 Ill. App. 140; *Illinois Cent. R. Co.* v. *Jonte* (1883), 13 Ill. App. 424; Redfield, Carriers §52; 1 Hutchinson, Carriers (3d ed.) §§265, 266, 457; Wheeler, Carriers 274; Ray, Neg. of Imp. Duties §137; 1 Clark & Skyles,

Agency §286; 5 Am. and Eng. Ency. Law (2d ed.) 305; 2 Ency. Law and Pr. 1039; 31 Cyc. 1335, 1402.

There is however not wanting authority for the doctrine that such contracts are in and of themselves invalid as against public policy, where the limitation is greatly disproportionate to the value. *Southern Express Co.* v. *Owens* (1906), 146 Ala. 412, 41 South. 752, 119 Am. St. 41, note, 8 L. R. A. (N. S.) 369, 9 Ann. Cas. 1143; *Southern Express Co.* v. *Gibbs* (1908), 155 Ala. 303, 46 South. 465, 130 Am. St. 24, 18 L. R. A. (N. S.) 874, note; *Hughes* v. *Pennsylvania R. Co.* (1902), 202 Pa. St. 222, 51 Atl. 990, 97 Am. St. 713, 63 L. R. A. 513, note. These cases, however, seem to be based either on a statute, or a declared public policy to prohibit such contracts; while the decisions of the Federal courts under the Interstate Commerce Act uphold them. Our own statute is an adoption of the Interstate Commerce Act, presumptively with the construction put on it, and it would seem wise to have a uniform rule, at least until the State shall declare a different public policy.

It is urged that if there was error in this ruling, it was harmless for the reason that the court instructed that if the jury found from the evidence "that the shipment of the mare * * * was made under the terms of a written contract fairly entered into, based on a reduction in the freight rates for transportation * * * then I instruct you that plaintiff is not entitled to recover", followed by a finding by the jury that appellee did not execute, or authorize Ross to execute the contract set up by appellant. Two elements enter into the consideration of the question: (1) the fact of execution itself, and (2) whether it was fairly entered into, based upon a reduction of the rate. The question of the execution of the contract was a proper subject of reply and inquiry, and overruling the demurrer thereto was not error. The second proposition entering into the question of execution, nec-

essarily presents the question whether the rate as fixed, and filed, is in itself reasonable, and based upon a sufficient consideration, and as being fairly entered into, and by the analogy between the Interstate Commerce Act and our own, that question seems to be settled, as amounting to the common law being modified by the statute, as to the reasonableness of the rate being a subject of inquiry on the trial. *Chicago, etc., R. Co.* v. *Cramer, supra; Interstate Commerce Com.* v. *Cincinnati, etc., R. Co.* (1897), 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243; *Priddy* v. *Wabash R. Co., supra; Western Union Tel. Co.* v. *Call Publishing Co.* (1901), 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765; *Tift* v. *Southern R. Co.* (1903), 123 Fed. 789; Judson, Interstate Commerce §163. Uniformity and equality seem to be the basic principles underlying each act, and to apply here, unless interdicted by the act of 1905. If the rates and schedules of valuation are filed with the commission, it must be held in the absence of fraud, that the rate is reasonable, the limitation permissible, and the contract in that respect fairly entered into, upon a proper consideration. Uniformity and equality can not be obtained in any other way.

As to the question of the execution of the contract, the instruction could only be justified upon the theory that appellee must either have executed it himself, or known of, or specifically authorized its execution, and the jury was so instructed by instruction No. 4, and under such circumstances, the jury was clearly misinstructed, and could not well have answered otherwise than it did. The court was also requested to instruct by appellant's instruction No. 4, that if appellee left the mare with Ross to be shipped, or if he left her with some other person to be shipped, that Ross in the one case, or the other person in the other case, was authorized to execute the contract, and that it is binding upon appellee. We see no escape from the proposition that this was error both ways, unless appellee was denied the right to ship without

limitation of liability or the act of 1905 is valid and controls. Appellee asserts a denial of the right of shipping under the common-law liability, based upon a clause in the schedule of classification and rates, reading as follows:

"Agents will be careful to explain the following requirements to shippers, viz., race horses, stallions, and other high priced animals, when consignors are unwilling to have the same transported at the above list of values, (referring to limited valuation) will be taken only by special arrangement, at one and one-half first class rates, calculated at the estimated weight named below, (the shipping weight) but agents must not accept for shipment such valuable animals without first communicating with the general, or division freight agent."

Immediately following the schedule of values and rates is this clause:

"Animals of greater value than given above will be subject to a corresponding advance in weights furnished in the above tables."

The official classification and tariff rates set out in the schedule, include horses, mules, stallions, jacks, and race horses, with the rate fixed, based upon values and rates, and number of animals in each car up to $5,000 in value for each animal, at one and one-half times the limited liability rate, when shipment is requested or made without limitation of liability. This case does not fall within the rule declared in *Cleveland, etc., R. Co.* v. *Hollowell, supra,* nor is it affected by any constitutional provision or statute, which prohibits contracts of the character of the one before us, so that the construction of the clause relied on by appellee is immaterial, for the reason that shipment was not denied or restricted. There was no delay or refusal to ship, except by special agreement, or to accept for shipment without communicating with the general or division freight agent, or any unwillingness on the part of the shipper to ship under the uniform bill of lading, or request to ship without limitation.

The agent testified that the shipment would have been made without limitation if requested, and that no questions were asked about it, and in this he is corroborated by Ross who testified that he was a common shipper, and that he was acquainted with the terms and conditions of the uniform stock contract with limited liability. The agent also testified that he had no authority to act except under the official classification, or to make any change in the form of the uniform stock contract, but that if shipment without limitation had been requested he was provided with blanks, and with a stamp to be impressed on the form, showing shipment without limitation of liability, and the schedule itself provides what shall be endorsed, and that impress fixes the liability as that of the common law. The agent also testified that he knew that the horses were race horses, but had no notice or knowledge of their value, or to whom they belonged, though he thought one of them belonged to appellee, but which one he did not know. Under these circumstances the clause relied on by appellee is immaterial, for the reason that none of its terms are brought into application to the shipment. The provisions of the schedule in the particulars here urged, could only apply where the shipper is unwilling to ship under the limited liability contract, and his request for unlimited liability shipment, could not or would not be complied with, or would be unavailing, which is not the case here presented. It is manifest that the general or division freight agent, when the rate has been fixed by schedule, as here, can not change or make another classification or rate, and can not deny shipment under the common law. Assuming that the inhibition against unreasonable rates is but an adoption of the principles of the common law by Congress, and the State legislature *(Tift* v. *Southern R. Co., supra; Murray* v. *Chicago, etc., R. Co.* [1894], 62 Fed. 24; *Western Union Tel. Co.* v. *Call Publishing Co., supra)* this clause can have no application to the question of rates, for they are fixed, and could have no force, so far as the

rate is concerned, and as certainly could not warrant a violation of the adopted rate applicable to the carriage, whether a common-law, or a limited liability carriage. Except for the statute, subd. d, §5541 Burns 1908, Acts 1907 p. 454, §10, no receipt or bill of lading need issue on a common-law carriage within the State. 1 Hutchinson, Carriers (3d ed.) §152.

The rigor of the liability of the common law may be modified by just, fair and reasonable agreement, except for negligence, and while shipment must be made without such 6. agreement, if the shipper so demands, and according to the schedule, in case a shipper declines to ship under the classified, uniform livestock contract, with limited liability, if no joint rate has been established, and the local rates applying to the shipment were not at hand, a through shipment could not be required until the one or the other had been obtained. *Southern R. Co.* v. *Reid* (1912), 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; *Caw* v. *Texas, etc., R. Co.* (1904), 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *Arthur* v. *Texas, etc., R. Co., supra; Kansas City, etc., R. Co.* v. *Carl, supra; Missouri, etc., R. Co.* v. *Harriman Bros., supra.* If however carriage is undertaken without the through or local rate having been established, the liability of the primary carrier is the same, even though the shipment is routed by the shipper, beyond the carrier's own line. *Norfolk, etc., R. Co.* v. *Dixie Tobacco Co.* (1913), 228 U. S. 593, 33 Sup. Ct. 609, 57 L. Ed. 980. The whole scope and tenor of both the Interstate Commerce Act and the State act is to adopt the rate filed with the commission as reasonable, and it was so held in both Federal and State courts when this act was enacted in Indiana. *Tift* v. *Southern R. Co., supra; Young* v. *Kansas City, etc., R. Co.* (1899), 33 Mo. App. 509; *McGrew* v. *Missouri Pac. R. Co.* (1893), 114 Mo. 210, 21 S. W. 463; *Windsor Coal Co.* v. *Chicago, etc., R. Co.* (1892), 52 Fed.

716; *Chicago, etc., R. Co.* v. *People* (1875), 77 Ill. 443; *Interstate Commerce Com.* v. *Cincinnati, etc., R. Co., supra; Sorrell* v. *Central R. Co.* (1885), 75 Ga. 509; *Burlington, etc., R. Co.* v. *Dey* (1891), 82 Iowa 312, 48 N. W. 88, 12 L. R. A. 436, 31 Am. St. 477. But if a common-law shipment is requested it must be complied with, and the question is not material in this case, unless it can be said that the demand to ship without limitation would have been unavailing, and the evidence does not disclose such fact.

Appellant attacks the act of February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914), on the ground that these sections are in violation of §22, Art. 4, of the State Constitution, as being a special law, prohibited as to "regulating the practice in courts of justice". In view of our conclusions, it is unnecessary to pass on that question, for if appellant is not affected by it, it is in no situation to present a question which might affect others. *Gordon* v. *Corning* (1910), 174 Ind. 337, 92 N. E. 59; *Cummins* v. *Pence* (1910), 174 Ind. 115, 91 N. E. 529; *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850, 24 L. R. A. (N. S.) 795, 140 Am. St. 248, 21 Ann. Cas. 1034; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823, 18 Ann. Cas. 1146.

It is to be observed that the practice act of 1905 (Acts 1905 p. 58, §§3918, 3919 Burns 1908) was approved February 27, and the Railroad Commission Act (Acts 1905 p. 83, §5531 *et seq.* Burns 1908) was approved February 28, though both went into effect April 15, 1905, but the latter act had a clause repealing all laws, and parts of laws in conflict with it. The presumption against implied repeal of statutes enacted at the same session, or close together, is strong, and they should be so construed as to give effect to both if possible, or at least to any portions which may be reconciled *(Cummins* v. *Pence, supra)*, but laws are also presumed to be passed with deliberation, and with knowledge of existing laws on the same subject, and when there is, as here, an express repeal of all laws in conflict, the in-

tention is obvious, that the purpose was to sweep away all existing acts on the same subject. It is clear therefore, that the legislature in adopting the Federal act, did so with the construction then put upon it, that the rate filed with the commission and published, is conclusively, certainly *prima facie,* a reasonable rate, unless, and until changed upon application to the commission, and a sufficient consideration, whether under a common-law, or limited liability carriage and this being so, the provisions (§3919, *supra*) of the act of February 27, 1905, for a trial of those questions, is in irreconcilable conflict with the act of February 28, 1905, as a modification of the former, and of the common law, and both can not be applied at the same time, concerning the same questions *(State, ex rel.* v. *Board, etc.* [1908], 170 Ind. 595, 621, 85 N. E. 513), in addition to the fact, that if the rate is only *prima facie* reasonable and as furnishing a sufficient consideration, it would have to be attacked in like manner with any other contract, but even that was not done in this case, though we do not mean to express an opinion that it may be done. It is so manifest that §3918, *supra,* would not have been enacted without §3919, *supra,* that both must be regarded as repealed. If §3918, *supra,* stood alone, we would be called upon to determine the constitutionality of that provision.

At common law the burden of showing the rate claimed as reasonable is on the carrier. Does the act of February 27, 1905, do any more than declare the common-law rule? If it stood alone and unaffected by the later act, we should have little difficulty with it on that question, but we are confronted with the act passed the next day with an express repealing clause of all laws and parts of laws in conflict with it (Acts 1905 p. 83, *supra*), and by §5 it is expressly provided that the rates filed and published ''shall be held, deemed and accepted to be reasonable, fair and just, and in such respects shall not be controverted'' in actions, except in direct actions to modify the same under other sections,

and by §7 the burden is expressly laid on the complaining party to show that the classification, rates, etc., are unreasonable and unjust. These provisions are in direct conflict with the common-law rule, and with the act of February 27. As at common law there may be some limitation by contract, so there may be under the unlimited liability rule. The act of February 28, goes farther than the Interstate Commerce Act, and makes the rate *prima facie* reasonable, just and on a sufficient consideration, precisely as the Supreme Court of the United States has construed the Interstate Commerce Act to mean. It is therefore evident that the two acts could not operate at the same time as to the same subject-matter. Except for the act of February 28, we might be justified in construing the act of February 27, as only declarative of the common law as applied to intrastate commerce, a matter of State control, as to burden of proof as to reasonableness of rates and consideration, and on the same analogy escape the claim of unconstitutionality of that act, as applied to intrastate commerce, but what could the legislature have meant in passing the act of February 28, wherein it expressly made the rate as filed, *prima facie* reasonable, and on a sufficient consideration, provided how and how only it can be changed, and put the burden on him who claims it unreasonable? If the act of February 27, could be separated so as to remain a complete and enforceable act by eliminating all that portion of §3918, *supra,* after the clause providing that a special contract shall be pleaded and shall not be admissible under the general denial, we might hold so much of it as valid except for the other question of its constitutionality under §22 of Art. 4, but it is apparent that no such construction can be put on it for the reason that the pith of the section is in the provisions of the next clause, declaring what the answer shall be, and can not be disconnected from the former portion of the section, and is in manifest and direct conflict with the express provisions of the act of February 28, on

the specific points. Suppose a shipment under either an unlimited liability, or limited liability rate, and contract with special permissible limitations as at common law, then eliminating the latter clause of §3919, *supra,* if the special contract is pleaded to a complaint under §3918, *supra,* it would be a defense under well-established rules of law, a result certainly not intended, or if intended, then we are confronted with a charge of unconstitutionality, as being a special law in practice in courts of justice. The fact that at the session of 1907 (Acts 1907 p. 454), very different provisions are made, does not restore §§3918, 3919 Burns 1908, Acts 1905 p. 58. The act of 1907 removes the provisions of §§5, 6 and 7, Acts 1905 p. 83, as to the conclusiveness of rates, the manner of attack on them, and placing the burden of proof on the carrier by §6, when the rate is attacked, but it still remains that the act of February 27, 1905, was repealed, as entirely inconsistent with the act of February 28, 1905. *Detroit, etc., R. Co.* v. *Barnes Paper Co.* (1912), 172 Mich. 586, 138 N. W. 211; *Ex parte Sohncke* (1905), 148 Cal. 262, 82 Pac. 956, 2 L. R. A. (N. S.) 813, 113 Am. St. 236, 7 Ann. Cas. 475; *State, ex rel.* v. *Board, etc., supra.*

It appears from the evidence, that there was no inquiry for, or denial of a common-law carriage, and that a demand for it would have been complied with, and that the application for shipment was made on Sunday, and the actual delivery for carriage was not made until 7 p. m. Monday, so that we are unable to concede appellee's contention that such demand would have been unavailing.

An ingenious and forceful argument is made by the learned counsel for appellee, while not attacking the validity of the Railroad Commission Act, to the point, that the common-law right of shipment at a reasonable rate without limitation of liability can not be taken away, or the court divested of the power, or relieved from the duty of determining what are fair and reasonable rates, by any commission, which shall take the place of courts. While recognizing

the force of the argument, we do not perceive that that has been done, or that it has been sought to be done in this case, but as here presented unless the Railroad Commission Act is invalid, the rate must be presumed to be fair, and upon a sufficient consideration, whether a common-law, or limited liability shipment, in addition to the fact that there may be limitations under a common-law carriage, and the further fact that as here presented, it is a voluntary shipment under a special contract, recognized by the Railroad Commission Act, if the latter is valid, and its validity is not assailed. It is insisted by appellee, however, that the Railroad Commission Act of 1905 (Acts 1905 p. 83) evinces a declared public policy of the State to prohibit the making of a contract of the character of the one before us, and that while a compliance with Acts 1905 p. 58, §3919 Burns 1908, was pleaded in the third paragraph of the answer, there was no proof of consideration for the limitation, or reasonableness of the rate, and the limitations. Subdivision d, §5541 Burns 1908, Acts 1907 p. 454 as we understand it, is no more than a declaration of the common law, that there shall be no limitation of liability for negligence, implying, as the schedule and classification of tariffs provide, that there may be limitations of value or other limitations on which rates are based, and as to §3919, *supra,* the rates and classifications being filed with the commission, they must be taken as both reasonable and based on a sufficient consideration, and if in conflict with §§3918, 3919, *supra,* as superseding them. It is therefore unnecessary to consider the question of the constitutionality of that act, tested by §22, Art. 4 of the State Constitution, raised by appellant, as to "practice in courts of justice".

The views expressed by the writer in which Erwin, J., concurs as to the act of February 27, being superseded by the act of February 28, and as to the first, third and fifth paragraphs of answer being good, but provable under the other

Vol. 182—27

answers, and that the evidence does not show that demand for an unlimited liability shipment would not have been complied with, are not the views of the majority of the court, which entertains the view that the act of February 27 is still in force, and consequently that none of the answers are good in any event, which views are set out in the concurring opinion, which becomes the prevailing opinion on those questions.

For the error in giving instruction No. 4 and refusing instruction No. 4 requested by appellant as pointed out herein, with respect to the execution of the contract, the judgment must be reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

## CONCURRING OPINION.

MORRIS, J.—It is urged by appellant that the act of the General Assembly of Indiana passed February 27, 1905 (Acts 1905 p. 58, §§3918-3920 Burns 1914), is void because in conflict with §10 of Art. 1, of the Federal Constitution, and certain provisions of the 14th amendment to the Federal Constitution. This claim is unfounded. *Adams Express Co.* v. *Croninger* (1913), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and cases cited; *Hirth-Krause Co.* v. *Cohen* (1912), 177 Ind. 1, 97 N. E. 1, Ann. Cas. 1914 C 708; Cooley, Const. Lim. (7th ed.) 555, 556; *Mondou* v. *New York, etc., R. Co.* (1911), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; *Mobile, etc., R. Co.* v. *Turnipseed* (1910), 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, Ann. Cas. 1912 A 463, 32 L. R. A. (N. S.) 226. Appellant also claims that the act violates §23 of Art. 4, of the Constitution of Indiana. The point is not well taken. It was for the legislature to determine whether a general law was applicable to the remedy sought. *Gentile* v. *State* (1868),

29 Ind. 409; *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849, and cases cited.

Counsel for appellant zealously contend that the statute is in conflict with §22 of Art. 4, of our Constitution which prohibits the legislature from passing "local or special laws * * * regulating the practice in courts of justice". This section does not prohibit classification, however, if the same be natural, reasonable, and fair. *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 232, 61 N. E. 197; *Board, etc.* v. *Lindeman* (1905), 165 Ind. 186, 73 N. E. 912; *Woods* v. *McCay* (1895), 144 Ind. 316, 43 N. E. 269, 33 L. R. A. 97; *Carr* v. *State* (1911), 175 Ind. 241, 93 N. E. 1071, 32 L. R. A. (N. S.) 1190; *Hirth-Krause Co.* v. *Cohen, supra.* The act reads as follows: "Section 1. That in all actions against common carriers on account of the failure by such carriers to safely transport and deliver property received by them, it shall be sufficient for the shipper or person entitled to maintain such action to aver and prove, in the first instance, the delivery to and receipt by the carrier of such property for transportation to a point named, together with the failure of the carrier to so transport or deliver and the resulting damage." §3918 Burns 1914. "Section 2. Any limitation by contract of the common law liability of such carrier is hereby made a matter of defense which shall be specifically set up by answer and which shall not be provable under a general denial. Such affirmative answer shall state facts showing that the contract counted upon is based upon a sufficient consideration, that is reasonable, that it was fairly entered into by the shipper after he had been given a *bona fide* and full opportunity to ship at a fair and reasonable rate without limitation of liability." §3919 Burns 1914. "Section 3. A reply of a general denial shall be sufficient to close the issue. And the issue thus formed shall be tried as other issues of fact are tried." §3920 Burns 1914.

Do the limitations of its provisions to actions against com-

mon carriers, render the classification unreasonable, unfair or unnatural? The authority of the legislature over the subject of pleading and evidence can not be disputed. *Mobile, etc., R. Co.* v. *Turnipseed, supra; Indianapolis St. R. Co.* v. *Robinson, supra,* and cases cited. Here, however, a rule of pleading and evidence is declared applicable only to suits against carriers. At common law, as decided in many jurisdictions, the shipper was entitled to an election to bring his action on the contract, or in tort, for damages arising from the violation of the carrier's duties, even though there was an express contract; and, by electing to sue in tort, to leave the burden on the defendant to allege and prove any special contract limiting its liability. *McGrath* v. *Northern Pac. R. Co.* (1913), 121 Minn. 258, 141 N. W. 164; 6 Cyc. 514; *Southern Pac. R. Co.* v. *Arnett* (1901), 111 Fed. 849, 50 C. C. A. 17; *Bartelt* v. *Oregon R., etc., Co.* (1910), 57 Wash. 16, 135 Am. St. 959, 106 Pac. 487; *Chicago, etc., R. Co.* v. *Calumet Stock Farm* (1901), 88 Am. St. 74, note. However, previous to the enactment of the above statute, this court held that in an action by a shipper against a carrier, for failure to safely transport and deliver goods, it was incumbent on the shipper to allege and prove his cause of action, and, if it was founded on a written contract, recovery could not be had on proof of an oral one. *Lake Shore, etc., R. Co.* v. *Bennett* (1883), 89 Ind. 457; *Hall* v. *Pennsylvania Co.* (1883), 90 Ind. 459; *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 88 N. E. 680. The statute, aside from the provisions relating to pleading and proof, practically declares the common-law rule in force in Indiana previous to its enactment. *Cleveland, etc., R. Co.* v. *Hollowell, supra; Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 69 N. E. 138, 63 L. R. A. 948. The case last cited was finally disposed of in 1904, less than a year before the meeting of the General Assembly of 1905. It was alleged in the complaint in that case, that while a contract limiting defendant's liability was executed, which recited that the

shipper, having the option to ship at a higher rate with unlimited liability, voluntarily decided to ship under the special contract at a lower rate, yet, in fact he was accorded no such option. It was held the plaintiff could recover, because there was no consideration for the written contract.

The case of *United States Express Co.* v. *Joyce* (1905), finally reported in 36 Ind. App. 1, 69 N. E. 1015, was an action involving a limited liability contract, and was appealed to the Appellate Court, and there the judgment below was affirmed on February 4, 1904. On petition the cause was transferred to this court, where the judgment was reversed on December 29, 1904, 72 N. E. 865. Two of the judges dissented. Within a short period thereafter, the personnel of this bench changed, and the opinion was stricken from the files, and the cause remanded to the Appellate Court, which again handed down its original opinion of affirmance. This enactment of this statute was on February 27, 1905. It thus not only appears that when this law of 1905 was enacted there was conflict among the decisions of the courts of the various states, relative to suits involving limited liability contracts, but there was also confusion and uncertainty in the decisions of the appellate courts of this State. In *Indianapolis St. R. Co.* v. *Robinson, supra,* this court held that the act of 1899 (Acts 1899 p. 58, §362 Burns 1914), which cast on defendants, in personal injury actions, the burden of proving the defense of contributory negligence, did not violate the constitutional provision in question, although the act was subject to the unusual criticism that where, in the same action, redress was sought for injury to person and property, resulting from the same accident, the plaintiff had the burden of alleging and proving freedom from contributory negligence, in reference to the property injury, while the defendant had the burden of proving such negligence in regard to the injury to plaintiff's person. In view of the foregoing, we are of the opinion that the classification made by this act was not arbitrary,

but was natural, fair and reasonable, and that it does not violate §22 of Art. 4 of our Constitution. *New York Cent. R. Co.* v. *Lockwood* (1875), 17 Wall. 357, 21 L. Ed. 627.

It is contended that since the enactment of the railroad commission law (Acts 1905 p. 83), the rates filed by carriers with the commission, have, at least until their altera-

9. tion, the force and effect of statutes, which the carrier may not violate without incurring criminal liability, and that notice of such rates is conclusively imputed to the shipper, and consequently that courts can not, on complaint of the shipper, adjudge such rates unreasonable, or hold that the shipper had no notice of the unlimited liability rate. *Adams Express Co.* v. *Croninger, supra; Kansas City, etc., R. Co.* v. *Carl* (1913), 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683. This contention ignores §2 of the act of 1905 (§3919 Burns 1914, *supra*), which casts on the carrier the burden of alleging and proving that the rate named in the contract was reasonable, and that the shipper was given a *bona fide* and full opportunity to ship at a fair and reasonable rate without limitation of liability. As this act was constitutional, it can not be ignored, if in effect. It is in effect, unless repealed, and it has not been repealed unless the railroad commission law, enacted February 28, 1905, and amended in 1907, by implication, performs such function. Appellant contends that it must be held that the commission act repeals by implication, because passed a day later, this act approved February 27, 1905. This contention must stand the test of the following rules of construction: (1) Repeals by implication are disfavored,

10. and are never recognized in the absence of irreconcilable repugnancy (9 Ind. Dig. Ann., Statutes, §159b) and then only to the extent of such repugnancy. *Carver* v. *Smith* (1883), 90 Ind. 222, 46 Am. Rep. 210; *Jeffersonville, etc., R. Co.* v. *Dunlap* (1887), 112 Ind. 93, 13 N. E. 403. (2) Where two acts are seemingly repugnant, they must, if possible, be so construed, that the latter will not operate as

a repeal of the former. *Blain* v. *Bailey* (1865), 25 Ind. 165. (3) There is no irreconcilable conflict, unless, after the application of every recognized rule of construction, substantial harmony is found impossible. *Hay* v. *City of Baraboo* (1906), 127 Wis. 1, 105 N. W. 654, 115 Am. St. 977, 3 L. R. A. (N. S.) 84. (4) The presumption against an implied repeal of an act by another of a later date, during the same session, is "especially strong". *Blumenthal* v. *Tibbets* (1903), 160 Ind. 70, 73, 66 N. E. 159; *State, ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 621, 622, 85 N. E. 513, and authorities cited; 36 Cyc. 1086. (5) Two acts which took effect the same day, (as here) unless clearly irreconcilable, must be construed as being *in pari materia*. *Sanders* v. *State* (1881), 77 Ind. 227. (6) It is a maxim of general application, that general things do not derogate from things special. Black, Interp. of Laws 117. As applied to the question of an implied repeal of an earlier by a later act of the same session, it is held that the later act, if in general terms, and not expressly contradicting the provisions of the earlier one, shall not be considered as intended to affect its more particular and specific provisions, unless absolutely necessary to hold otherwise in order to give any meaning, at all, to the words of the later act. Black, Interp. of Laws 117; Sedgwick, Stat. and Const. Law (2d ed.) 98; 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §275; Dwarris, Statutes 765; *Deneen* v. *Unverzagt* (1907), 225 Ill. 378, 80 N. E. 321, 8 Ann. Cas. 396, and cases cited; *Jersey City* v. *Hall* (1910), 79 N. J. L. 559, 76 Atl. 1058, Ann. Cas. 1912 A 696; 36 Cyc. 1088, and authorities. The reason for such rule is clear. In passing the special act, the minds of the legislators were necessarily directed to the details of the special case, and it is not probable that they should intend, by a general act, to derogate from that which they have carefully supervised and regulated. *Lewis* v. *Cook County* (1897), 72 Ill. App. 151; 36 Cyc. 1088. (7) Where a particular

intention is expressed in an act, which conflicts with a general intention expressed in a later one, the particular intention shall be given effect, leaving the later act to operate only outside the scope of the former. *State, ex rel.* v. *McCardy* (1895), 62 Minn. 509, 64 N. W. 1133; 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §275, citing Dwarris, Statutes 765; Black, Interp. of Laws 118; *Crane* v. *Reeder* (1871), 22 Mich. 322; 36 Cyc. 1088; *Woodworth* v. *Kalamazoo* (1903), 135 Mich. 233, 97 N. W. 714.

The object of all rules of statutory construction is the ascertainment of the legislative intent. *Board, etc.* v. *Given* (1907), 169 Ind. 468, 80 N. E. 965, 82 N. E. 918. In the search for such object, it is proper to consider the common law, and other statutes relative to the same subject-matter, together with contemporaneous legislative history, and the evils at which the legislation was aimed. *State Board, etc.* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826.

It can be said with assurance that neither of the statutes under consideration was intended to confer any new right or privilege on the carrier, or to take away or impair any right of the shipper then existing, at common law, or under any statute. With equal confidence it may be asserted that each statute was enacted for the better protection of shippers, and the commission act was especially aimed at excessive rates and unjust discrimination between persons and localities. *Sullivan* v. *Minneapolis, etc., R. Co.* (1913); 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612. At the common law, as determined by this court, it was unlawful for common carriers to fix unreasonable rates, or to unjustly discriminate between shippers, and they were liable in damages for a violation of the law in either respect. *Louisville, etc., R. Co.* v. *Wilson* (1892), 132 Ind. 517, 32 N. E. 311, 18 L. R. A. 105, and cases cited; *Chicago, etc., R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 275, 39 N. E. 451, 50 Am. St. 320; *Western Union Tel. Co.* v. *State, ex rel.* (1905),

165 Ind. 492, 500, 76 N. E. 100, 3 L. R. A. (N. S.) 153, 6 Ann. Cas. 880. Both at common law, and under our statutes, railway companies were authorized to establish rates. *Louisville, etc., R. Co.* v. *Wilson, supra,* 526; subd. 10, §5153 Burns 1901, §3903 R. S. 1881. The increase of rates by railway companies was restricted by the act of 1867. Acts 1867 p. 162, §5333 Burns 1901, §4038 R. S. 1881. Discrimination by express companies was forbidden by the act of 1901. §§3312b 3312f Burns 1901, Acts 1901 p. 149; *Adams Express Co.* v. *State* (1903), 161 Ind. 328, 67 N. E. 1033. The right of a carrier to contest the validity of a state regulation of interstate rates, is not impaired by its action in putting them into effect. *Allen* v. *St. Louis, etc., R. Co.* (1913), 230 U. S. 553, 33 Sup. Ct. 1030, 57 L. Ed. 1625.

By §3 of the railroad commission act (§5533 Burns 1908, Acts 1907 p. 454) it is made the duty of the commission to "supervise" railroad freight rates, but the provisions of the section are expressly limited by clause h thereof, to cases where complaint against the carrier is filed with the commission. It does not appear that the rates here were ever the subject of consideration by the commission. They were made by the carrier and filed with the commission, as required by the act, but it is not alleged that they were ever approved by that body as a result of any hearing or investigation. The commission is authorized by clause b, §3, of the act, on failure so to do by the carriers, to establish joint freight rates, and by clause d thereof, to change or abolish rates found to be unreasonable, unjust or discriminative. By §5 of the original act (Acts 1905 p. 83) it was provided that in actions between private parties and carriers, under the law, rates *approved by* or *made by* the commission before the commencement of the action, should be deemed just and reasonable, and, in such respects not subject to controversy, except as thereinafter provided. This provision was eliminated by the amendment of 1907. Acts 1907 p. 468. Section 6 of the act as amended (§5536

Burns 1914, Acts 1913 p. 820) provides that any carrier, or party, dissatisfied with any final order of the commission, may bring an action in the proper court, to suspend or vacate such order; and when the cost of transportation may be involved in the action, the burden of proof is cast on the carrier. By §10 (§5540 Burns 1914, Acts 1911 p. 545) it is made a criminal offense for a carrier to charge any other than the regular rate, as named in the schedule filed with the commission, for any transportation service. Nowhere in the act is found any reference to limited liability contracts, except in clause d, §11 (§5541 Burns 1914, Acts 1911 p. 545), which is as follows: "nor shall any carrier limit or change its common law liability by contract or otherwise, as to its responsibility for the negligent acts of its agents and servants with reference to property in its custody as a common carrier; *Provided, that nothing herein contained shall be so construed as to abridge, or in anywise lesson the liability of any such carrier as it now is under existing laws.* * * *" The first clause above quoted is merely declaratory of the common law. *Cleveland, etc., R. Co.* v. *Hollowell, supra.* It is proper to state that the contract here, as appellant contends, does not attempt to absolve the carrier from liability from negligence but to measure the recovery by a valuation alleged to have been declared for the purpose of securing a lower rate. The proviso will be considered later.

In relation to the making of rates, filing schedules thereof with the commission, and the penalties against discrimination, it may be conceded, so far as concerns this controversy, that our railroad commission law is a substantial adoption of like provisions of the Interstate Commerce Act. Previous to the adoption of the Carmack amendment to the Interstate Commerce Act in 1906, there was a great diversity of laws in the several states relating to carrier's limited liability contracts. In some states such contracts were inhibited by constitutional provisions, statutes, or the state's pub-

lic policy, as declared by the courts. In others, such contracts were recognized as valid, subject to statutory, or common-law restrictions, as determined by the various courts. *Adams Express Co.* v. *Croninger, supra.*

*Pennsylvania R. Co.* v. *Hughes* (1903), 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268, involved a judgment under an interstate shipment, for $10,000 in favor of a shipper, in an action for the value of a horse, shipped under a special contract, to be performed in Pennsylvania, which, on its face, limited the recovery to the stipulated valuation of the animal, in the sum of $100. The common law, as interpreted by the supreme court of Pennsylvania, rendered the limitation invalid. It was contended by the carrier, that the law of Pennsylvania, as construed by its courts, was in conflict with the provisions of the interstate commerce act and hence invalid. In the course of the opinion it is said: "It may be assumed that under the broad power conferred upon Congress * * * it would be lawful for that body to make provision as to contracts for interstate carriage, permitting the carrier to limit its liability to a particular sum in consideration of lower freight rates for transportation. * * * we look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate on it, is there any valid objection to the state enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?" *Adams Express Co.* v. *Croninger, supra,* was decided by the Supreme Court of the United States in January, 1913. The opinion was delivered by Mr. Justice Lurton, and in discussing the cases of *Chicago, etc., R. Co.* v. *Solan* (1898), 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688, and *Pennsylvania R. Co.* v. *Hughes, supra,* he said: "In view of the decisions of this court in the two cases last referred to, we shall assume that this case is governed by them, unless the subsequent legis-

lation of Congress is such as to indicate a purpose to bring contracts for interstate shipments under one uniform rule of law not subject to the varying policies and legislation of particular states.''

It was then held that by virtue of the provisions of the Carmack amendment, the Interstate Commerce Act superseded all statutory and declared policy regulations of the various states. This conclusion was reached, not because of any conflict between such regulations and the interstate act, for the opinion concedes that ''there is no reference to the effect upon state regulation'' in the interstate act as amended; but it was arrived at, because Congress, by the amended act, was held to have intended thereby to cover the entire field. At no time could a state regulation have been upheld, had it been conceded as conflicting with the act of Congress, even though the scope of congressional legislation was limited; on the other hand, after congressional legislation did cover the entire field, no state regulation of interstate commerce could be held effective, even though conceded to be in aid of the act of Congress, and to more effectually carry out the obvious intent of the congressional act.

It should not be overlooked that the decision in the Croninger case involved nothing but an interpretation of the commerce act, standing alone. Had there been, in addition thereto, a previous act of Congress, similar to our act, regulating the enforcement of limited liability contracts, it is scarcely conceivable from the reasoning of the opinion, that the Supreme Court of the United States would have reached the conclusion that it did. In matters involving an interpretation of the Interstate Commerce Act, the determination of the Supreme Court of the United States is the law of the land and binding on the supreme courts of the various states. *Wabash R. Co.* v. *Priddy* (1913), 179 Ind. 483, 101 N. E. 724. The present case involves nothing but intrastate traffic, and the duty of construing our State statutes with reference thereto

devolves solely on the courts of appeal of this State. While in such case this court is in no wise bound to follow the reasoning of the Supreme Court of the United States, in decisions under similar statutes, a proper regard for the wisdom of the judges of that great tribunal should impel a most careful consideration of such reasoning. No such consideration is appropriate here however, because of the absence from the congressional legislation of any provision resembling our act regulating limited liability contracts.

In *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), 175 Ind. 196, 91 N. E. 735, 93 N. E. 996, the complaint contained the averments required by the act of February 27, 1905. The shipment was an interstate one, and the defendant, among other things relied on a limited liability contract, and contended that our act of February 27, 1905, conflicted with the interstate commerce act, "in that the latter recognizes but one rate". It was held by this court that there was no conflict between the two acts. It is true that the above case was decided before the decision of the Croninger case, *supra.* It is also true that the shipment in the Mitchell case was made after the Carmack amendment was adopted, and for reasons already stated, there is no conflict between the decisions in the Mitchell and Croninger cases, in relation to conflict between the acts, though there is conflict as to the scope of the interstate commerce law, as amended in 1906. Our railroad commission law was enacted more than a year before the adoption of the Carmack amendment. However, in 1907, the act was amended so as to contain the same provisions in regard to rate discrimination as are found in the 1906 amendment of the interstate act. These amendments however cannot justly be said to affect the controversy here relative to the legislative intent. The Interstate Commerce Act was passed in 1887. U. S. Comp. Stat. 1901 p. 3154. It then denounced discrimination and affixed a penalty. §§2, 3, 10 of same act. By the act of March 2, 1889, the original act was amended so as to make it a misdemeanor

to obtain transportation at less than "the regular rates then established." These provisions were in the Interstate Commerce Act when the case of *Pennsylvania R. Co.* v. *Hughes, supra,* was decided. In addition thereto, the congressional enactment of February 19, 1903, commonly known as the Elkins act, was also in effect; yet the court then discerned no conflict in the singleness and fixedness of rates established under the provisions of the act, and the various regulations and restrictions of the several states. By the congressional amendment of 1906, and by the Indiana amendment of 1907 (Acts 1907 p. 434), the scope of each act was extended and unlawful discrimination was more specifically defined, but it was equally unlawful, before, as after, the respective amendments, to furnish transportation for less than the regular rate, which as to unlimited liability contracts was the one published and on file with the commission.

In *Cleveland, etc., R. Co.* v. *Hollowell, supra,* the shipment was made in June, 1906. The cause was decided in 1909. It was contended there by appellant, that our act of February 27, 1905, was unconstitutional. The court held it was not necessary to determine that question, because, under the findings, the contract was invalid at common law. If appellant's contention here is sound, that decision was erroneous, for if our commission law shall be construed as impliedly repealing the limited liability statute, it must, for stronger reason, be held to supersede any like common-law rule to the same effect.

It will not be contended that the legislature was without power to except limited liability contracts, or, as it is generally termed, released rates, from the measure of conclusiveness accorded other ones, and consequently it is not necessary here to determine such measure with reference to any other than released rates. However, under a Minnesota statute which expressly declared that the carrier's published rates should be "deemed just and reasonable", a shipper who shipped chattels at the published rate was

awarded damages, in a common-law action for discrimination, measured by the difference between the published rate and one accorded a competitive shipper. *Sullivan* v. *Minneapolis, etc., R. Co., supra.*

It does not necessarily follow that because the legislature has fixed a penalty for charging any other than the published rate, that the latter must be held conclusively just and reasonable. A conspicuous example of such principle is found in our marriage laws. Persons may be punished criminally for entering into the marriage relation, without having first procured license, or taken the statutory steps for preserving a record of the marriage, and yet the latter be entirely valid. *Teter* v. *Teter* (1885), 101 Ind. 129, 134, 54 Am. Rep. 742. Section one of the Elkins act (1903) provided that in criminal prosecutions, the published rate should be "conclusively deemed to be the legal rate" (U. S. Comp. Stat. 1901, Supp. 1907 p. 880); yet such provision did not, previous to the congressional legislation of 1906, conflict with state regulations concerning released rates which restricted their validity to cases where it was shown, on proof, that they were reasonable. *Adams Express Co.* v. *Croninger, supra.*

Keeping in mind the evident legislative purpose in enacting the commission act, as not to restrict but to enlarge the rights of the shipper, and not to extend the privileges of the carrier, but rather to curtail them, it is difficult to reconcile the proviso in clause d, §11 of the act (§5541 Burns 1914, *supra*), with the legislative intent to repeal the former one. The normal function of a proviso is to limit and restrain the preceding enactment. 2 Lewis' Sutherland, Stat. Constr. §§351, 352. This proviso declares "that nothing herein contained shall be construed as to abridge, or in anywise lessen the liability of any such carrier as it now is under existing laws." Under the common law, as declared by the Appellate Court, at the beginning of the legislative session of 1905, in *Evansville, etc., R. Co.* v. *McKinney*

(1905), 34 Ind. App. 402, 73 N. E. 148, the shipper had
the right, in case of negligent loss of his property shipped,
to recover the full value thereof, regardless of any contract
of limitation, unless the limited liability rate was fair and
reasonable, and was accepted by the shipper after full op-
portunity to ship under an unlimited one. By the act of
the day previous to the passage of the commission law, this
right was not only continued, but the burden of pleading
and proving the reasonableness of the rate, etc., was shifted
to the carrier.

No obscurity affects the language of the proviso, and it
is its own best expounder of the legislative intent. To say
that the theory of implied repeal, here presented, would not
abridge or lessen the liability of carriers under then exist-
ing laws, requires a construction ignoring the plain meaning
of nontechnical words—a construction never permissible.
Subd. 1, §240 Burns 1914, §240 R. S. 1881. However,
should this proviso be ignored, and conceding that the courts
erred in *Pennsylvania R. Co.* v. *Hughes, supra,* and cases
following it, and in *Pittsburgh, etc., R. Co.* v. *Mitchell, supra,*
and disregarded all the rules of construction heretofore enu-
merated except the sixth and seventh ones, it must be held
under these two rules that the specific provisions of the act
of February 27, 1905, were not repealed by the general ones
of the act of February 28, but that these particular pro-
visions were intended to stand as exceptions to the general
scope of operation of the commission act. *Crane* v. *Reeder,
supra; State, ex rel.* v. *McCardy, supra.* This conclusion
conflicts with no rule of construction, and is in unison with
the obvious general intent of the legislature in both acts
to secure to the shipper fairer treatment than theretofore
accorded him.

The act of February 27, 1905 (Acts 1905 p. 58), is valid
and in full force and effect and consequently the court did
not err in sustaining appellee's demurrer to the paragraphs

of answer which proceeded on the theory that said act was either repealed or invalid.

Cox, C. J., and Spencer, J., concur in foregoing opinion of Morris, J.

NOTE.—Reported in 105 N. E. 483, 491. As to limiting liability on joint undertaking between initial and connecting carriers, see 31 L. R. A. (N. S.) 50. On the elements entering into determination of reasonableness of railroad rates prescribed by the state for local traffic, see 15 L. R. A. (N. S.) 108; 25 L. R. A. (N. S.) 1001. As to the authority of an agent shipping goods to enter into a contract limiting the liability of the carrier, see 1 Ann. Cas. 676; 19 Ann. Cas. 806; Ann. Cas. 1913 E 292. As to carrier's liability for loss of or injury to live stock, see 130 Am. St. 432. See, also, under (1) 6 Cyc. 515; (2) 6 Cyc. 385, 393; (3) 6 Cyc. 408; (4) 38 Cyc. 1632; (5) 38 Cyc. 1703; (6) 6 Cyc. 403; (7) 6 Cyc. 518; (8) 36 Cyc. 1013; (9) 36 Cyc. 1093; (10) 36 Cyc. 1071; (14) 36 Cyc. 1106, 1137, 1145, 1147; (15, 17) 6 Cyc. 1915 Ann. 492-45; (16) 11 Cyc. 751.